**E. Driver ROWLAND and Mildred Rowland, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. HS–69–C–17.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.

July 28, 1970.

Ben A. Douglas, Atty., Tax Division, Dept. of Justice, Fort Worth, Tex., for defendant.

Jerry T. Light, of Smith, Williams, Friday & Bowen, Little Rock, Ark., for plaintiffs.

## OPINION

JOHN E. MILLER, Senior District Judge.

This is a civil action whereby plaintiffs seek a refund of federal income taxes together with interest allegedly illegally assessed by defendant and paid by plaintiffs, with respect to the calendar year 1964. The sole issue to be decided is whether a valid election was made by the Red Barn Restaurant, Inc., (hereinafter called Red Barn) in 1961 to be treated as a small business corporation under section 1372 et seq. of the Internal Revenue Code of 1954, so as to entitle plaintiffs to treat the losses of the corporation as their individual losses in 1964.[1]

The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a), Fed.R.Civ.P.

The court has jurisdiction by virtue of 28 U.S.C. § 1346(a) (1).

Most of the relevant facts were stipulated and will be incorporated herein. Articles of incorporation for Red Barn were filed with the Arkansas Secretary of State on August 7, 1961, and with the County Clerk of Garland County, Arkansas, on August 9, 1961. Also, on August 7, 1961, the corporation issued common stock to plaintiffs and one other shareholder for a total consideration of $5,-000.00 in cash. Red Barn and its officers engaged in no business activity and acquired no additional assets until August 19, 1961. On that date, the corpo-

---

1. In their complaint, plaintiffs alleged that the IRS erroneously disallowed the deduction by plaintiffs of their pro rata share of the losses of both Red Barn and another corporation, the Hot Springs Luxury Motor Lodge Investment Company, Inc., on their 1964 income tax return. The deficiency assessment for 1964 is based upon the disallowance of deductions for the losses of both corporations, but only the question of the availability to the plaintiffs of their pro rata share of the losses of Red Barn is before the court at the present time.

ration purchased land and a building for a total price of $60,000.00.

Charles Hackney, the president of Red Barn, properly executed United States Treasury Department Form 2553, "Election by Small Business Corporation," on behalf of the corporation on September 6, 1961. On the same date, Hackney and the plaintiffs executed shareholder consent forms. Unfortunately, the election and consent forms were not mailed to the Internal Revenue Service until September 13, 1961, and were received on September 14, 1961, by the District Director at Little Rock, Arkansas.

Red Barn opened for business with the public on January 26, 1962. On June 26, 1962, Hackney transferred his common stock to plaintiff E. Driver Rowland, leaving plaintiffs as the sole stockholders of the corporation. For the fiscal years ending June 30, 1962, June 30, 1963, and June 30, 1964, Red Barn filed Treasury Form 1120 S, "U. S. Small Business Corporation Return of Income," reflecting a corporate loss each year, and the plaintiffs deducted their pro rata share thereof on their jointly filed individual income tax returns. The corporation did not timely file corporate income tax returns for the fiscal years ending June 30, 1965, and June 30, 1966, and its corporate charter was revoked by the State of Arkansas on February 23, 1966. During 1966, an audit of the plaintiffs' income tax returns for the years 1963, 1964 and 1965 [2] was conducted by the Internal Revenue Service, and it was determined therefrom that Red Barn's election to be taxed as a small business corporation was not timely filed and was invalid. As a result, the IRS disallowed the corporate loss of $31,012.20 claimed by plaintiffs on their 1964 individual income tax return from the operation of Red Barn and assessed a deficiency against plaintiffs in the amount of $17,026.47 [3] for the year 1964.

That sum was paid by plaintiffs to the District Director of Internal Revenue on May 16, 1969, and a claim for refund of the entire sum was filed by plaintiffs on June 18, 1969, and denied on June 23, 1969.

Subchapter S of Chapter 1 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1371–1377, provides for elections by certain small business corporations as to taxable status. In general, where a qualified corporation has so elected, it is not subject to income tax, and its undistributed taxable income is taxed to the shareholders pro rata or its net operating loss is allowable to the shareholders pro rata as a deduction from gross income. The manner and time of election are explicitly set forth in the statute and the regulations promulgated pursuant thereto. 26 U.S.C. § 1372(c) (1) provides that an election:

"* * * may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations."

At the time the election was made by Red Barn, Treas.Reg. § 1.1372–2 (1961) provided in part:

"(b) * * * In the case of a new corporation whose taxable year begins after the first day of a particular month, the term 'month' means the perid commencing with the beginning of the first day of the taxable year and ending with the close of the day preceding the numerically corresponding day of the succeeding calendar month, * * *. *For purposes of this subparagraph, the first month of the taxable year of a new corporation does not begin until the corporation*

---

**2.** The United States was barred by limitations regarding the year 1962. 26 U.S.C. § 6501(a).

**3.** A portion of the deficiency assessment was attributable to the disallowance of plaintiffs' deduction of their pro rata share of the losses of the Hot Springs Luxury Motor Lodge Investment Company, Inc.

*has shareholders or acquires assets or begins doing business, whichever is the first to occur."* (Emphasis supplied.)

"(c) * * * An election is effective for the entire taxable year of the corporation for which it is made and for all succeeding taxable years of the corporation, unless it is terminated with respect to any taxable year. Thus, the election has a continuing effect and need not be renewed annually, although annual returns of information must be filed under section 6037."

Red Barn issued stock on August 7, 1961, and acquired assets in the form of cash in payment for the stock on the next day. It therefore seems clear that an election under Section 1372(a) should have been made no later than the close of September 6, 1961. Plaintiffs argue, however, that such a construction of the statute and the applicable regulations is not in keeping with common business practice, and that, until August 19, 1961, when Red Barn acquired land and a building, the corporation was acting merely as a caretaker of the cash funds acquired in payment for the issued stock and comprised nothing more than a "corporate shell." They contend that Red Barn's taxable year actually began on August 19, 1961, because it began to function actively as a corporation on that date. Plaintiffs therefore conclude that the election received by the IRS on September 14, 1961, was valid. It is, of course, undisputed that if Red Barn made a valid election in 1961, such election was continuing and valid for all succeeding taxable years pertinent to this litigation.

■ Plaintiffs' argument, in essence, is that the first month of a taxable year, for the purpose of a Subchapter S election, begins on the date a new corporation commences doing business, even if it has first acquired assets and shareholders. Plaintiffs would apparently construe Treas.Reg. § 1.1372–2 in the conjunctive or contend that common

business practice dictates that "doing business" is the prime criterion. Such a construction is contrary to the explicit wording of the regulation and is unsupported by case authority. In Bone v. Commissioner, 52 T.C. 913, 919 (1969), the corporation came into existence on August 16, 1963, but did not acquire stockholders until October 29, 1964. From October 7, 1963, until the corporation acquired stockholders, it purchased and improved property, maintained a bank account and books and records, hired labor, paid taxes and expenses, arranged financing and generally directed its efforts toward the development of a profit-making capacity. A Subchapter S election was filed on November 16, 1964, and ultimately disallowed by the IRS. Petitioner argued in the Tax Court that the corporation did not acquire its assets and begin business until it acquired stockholders, and that it could not have filed a valid Subchapter S election until its stock was issued, for the reason that the land which formed the basis of the business operation was transferred to the corporation on the condition that an agreed-upon amount of stock would be issued to the vendor (petitioner). The Tax Court construed Treas.Reg. § 1.1372–2 in the disjunctive and held that the corporation acquired assets and began business prior to the date it acquired shareholders, stating at 52 T.C. 920:

"Since we have found that TBC acquired assets and began business no later than October 7, 1963, its first taxable year began no later than such date, and therefore its election filed on November 16, 1964, is clearly untimely with respect to its first taxable period ending August 31, 1964. Similarly, such election is untimely with respect to TBC's taxable year beginning September 1, 1964, and ending August 31, 1965."

It seems beyond dispute that the occurrence of any of the three events set forth in the regulation marks the beginning of the first month of the taxable year of a new corporation. There is ab-

solutely no evidence of administrative intent to prefer one occurrence over the others, nor have plaintiffs offered any persuasive reasons why the date a new corporation begins doing business should be considered paramount. It does not appear that the month before or the month in which a new corporation begins doing business would offer substantial advantages in deciding whether to make a Subchapter S election. Certainly the period could be expected to reveal little as to prospective profit or loss. Particularly is this the case with regard to Red Barn, which did not open for business until January 26, 1962, over four months after plaintiffs claim they were required to file an election. In any event, Congress has directed that the Treasury Department regulate the manner of making a Subchapter S election, and the applicable regulations are neither vague nor ambiguous. The court therefore holds that Red Barn was required to make a Subchapter S election for its first taxable year before the close of September 6, 1961.

Although there is no evidence in the record that the Commissioner refused to grant an extension of time for filing an election or that Red Barn ever requested one, the failure of the IRS to reject or in any manner act upon the election until 1966 merits comment. The Commissioner has taken the position that he does not have the power to grant an extension of time in which to file a Subchapter S election, Rev.Rul. 60–183, 1960–1 C.B. 625, and the courts have similarly concluded that no extension may be granted in the face of such explicit time limits. See Simons v. United States, (D.Conn.1962) 208 F.Supp. 744; Feldman v. Commissioner, (1966) 47 T.C. 329; Frentz v. Commissioner, (6 Cir. 1967) 375 F.2d 662, aff'g 44 T.C. 485 (1965); Pestcoe v. Commissioner, (1963) 40 T.C. 195. The reasoning of these cases is cogently expressed in *Pestcoe*, where the court, in a case having far greater equitable appeal than the instant case, stated at 40 T.C. 198:

"The petitioners point to many areas where the Internal Revenue Code provides for lenient treatment. Here, sections 1372(c) (1) and 1372(c) (2) are both demanding and explicit. There is no such provision for leniency with respect to the filing of elections under subchapter S.

"It is true that the result may be harsh, but the Court cannot grant an extension in the face of such definite time limits. * * * The election is optional, but if a taxpayer wishes to take advantage of these provisions he must also comply with their requirements. * * * In any event, whatever the equities or the harsh results, we do not feel that we can grant an extension of time where the Congress has specifically set the time for the making of the election required by the Code if the privilege of special tax treatment is to be enjoyed by certain small business corporations. * * *."

■ The privilege of making a Subchapter S election was afforded as a matter of legislative grace; the election therefore must be made in the manner and time prescribed by Congress. To extend the time beyond the limits prescribed is a legislative, not a judicial, function. It is, of course, undisputed that the defense of laches cannot be asserted against the United States in enforcing a public right unless Congress otherwise provides, Federal Maritime Commission v. Caragher, (2 Cir. 1966) 364 F.2d 709; Olshausen v. C. I. R., (9 Cir. 1960) 273 F.2d 23, cert. den. 363 U.S. 820, 80 S.Ct. 1256, 4 L.Ed.2d 1517; United States v. Carroll, (W.D.Ark. 1962) 203 F.Supp. 423, and this court cannot grant an extension of time for the reasons stated.

■ It follows that, because the election filed by Red Barn in 1961 was untimely and therefore invalid, it was also invalid for all subsequent taxable years. It is quite true that Treas.Reg. § 1.1372–2(c) provides that an election is effective for all succeeding taxable years of

the corporation unless terminated with respect to any taxable year, but subsection (c) presumes an initially valid election. Feldman v. Commissioner, supra. In an analogous situation, the court in *Feldman* stated at 47 T.C. 334:

> "Finally petitioner argues that in any event, even if the purported election is held untimely for the fiscal year ending September 30, 1961, it must be held to be timely for the fiscal year ending September 30, 1962. It does not follow that this is true. The purported election was for the fiscal year ending September 30, 1961. If it had been timely filed for 1961, no election would have had to be made for 1962. * * * But the purported election for 1961 was not timely filed. *Therefore, it is the same as if no election had been filed and section 1.1372(c) would not be operative.*" (Emphasis supplied.)

Since subsection (c) was not operative, any election for 1962 or any other subsequent taxable year would have had to be made during the first month of such taxable year, or at any time during the month preceding such first month. No such election was made by Red Barn during these months for any year after 1961. The court must therefore hold that Red Barn was not entitled to be treated as a small business corporation under Subchapter S of the 1954 Code for 1961 or any subsequent year, and plaintiffs were not entitled to treat the losses of the corporation as their individual losses in 1964. See, also, Forrester v. Commissioner, (1968) 49 T.C. 499.

The holding of the court is admittedly but unavoidably harsh, and it will console plaintiffs little that this court is in full agreement with the view expressed by Mr. Justice Holmes in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, (1920) 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, that "Men must turn square corners when they deal with the Government." It is the duty of the courts to observe the conditions defined by Congress for filling the public treasury, and where Congress has specifically set out the procedure that must be followed in order for a corporation to obtain the benefits of Subchapter S, and the corporation does not follow such procedure, the courts cannot supply what the taxpayer had failed to do.

Therefore, judgment is being entered today dismissing the complaint of plaintiffs and adjudging costs against the plaintiffs.