**Q. A. CALHOUN and Kathleen G. Calhoun, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Donald D. JONES and Carolyn C. Jones, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Jackson B. McCARTY and Rosamond C. McCarty, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 73-C-4-A, 73-C-5-A, 73-C-6-A.**

United States District Court, W. D. Virginia, Abingdon Division.

Nov. 15, 1973.

Joseph Wysor Smith, Roanoke, Va., for Calhouns.

Joseph Wysor Smith, Roanoke, Va., for Jones.

Joseph Wysor Smith, Roanoke, Va., for McCartys.

Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., Scott P. Crampton, Asst. Atty. Gen., John F. Murray and Helen E. Marmoll, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

TURK, Chief Judge.

These three actions, which by order of this court pursuant to Rule 42(a) of the Federal Rules of Civil Procedure have been consolidated, involve claims for refunds in federal income taxes together with interest allegedly illegally assessed by defendant and paid by plaintiffs. In each case, the plaintiffs are husband and wife as well as shareholders in Empire Manufacturing Corporation. The issue to be decided in this case is whether the corporation (hereinafter referred to as Empire) organized by the six plaintiffs filed a timely election to be taxed under Subchapter S of the Internal Revenue Code of 1954, 26 U.S.C. § 1371, et seq. The material facts necessary for a decision in each of these cases have been stipulated in the plaintiffs' answers to the defendant's request for admissions and interrogatories. Also made part of the record in this case are various documents relating to Empire's purported election to be treated as a Subchapter S corporation and the affidavit from an attorney employed by the Department of Justice Tax Division. Since the material facts necessary for decision as to whether Empire filed a timely election to be treated as a Subchapter S corporation are not in dispute, this case is appropriate for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTS

Articles of Incorporation for Empire Manufacturing Corporation were issued by the State Corporation Commission of Virginia on September 12, 1966. The original incorporators were three individuals other than the plaintiffs to this action. On June 21, 1967, the original incorporators met and elected themselves to the offices of President, Vice-President, and Secretary-Treasurer of the corporation. On October 2, 1967, Empire held its first shareholders meeting and its first board of directors meeting. Permanent officers were elected; shares of stock were officially designated for issuance; and a registered agent was named at these meetings. Plaintiff Donald Jones was elected President, plaintiff Q. A. Calhoun was elected Vice-President and Chairman of the Board and plaintiff J. B. McCarty was elected Secretary. Donald Jones was also designated as Registered Agent. The subscribers to the capital stock of

Empire at these meetings in October were as follows: Q. A. Calhoun, 500 shares; Donald Jones, 500 shares; and J. B. McCarty, 500 shares. The President and Secretary were directed to issue to the subscribers their capital stock upon the payment of the issue price of $100 per share. On November 7, 1967, the following amounts of stock were actually issued: 1600 shares to Q. A. Calhoun; 200 shares to Carolyn Jones; 500 shares to Donald Jones; 500 shares to J. B. McCarty; and 200 shares to Rosamond McCarty.

Meanwhile, on April 28, 1967, Q. A. Calhoun had deposited $25,000 in Empire's name in the First National Exchange Bank of Virginia in the form of a loan to the corporation. On August 14, 1967, a deed dated July 10, 1967, which conveyed a one-third interest in a seventeen-acre tract of land to Empire, was recorded in the Smyth County Circuit Court Clerk's Office. On August 23, 1967, the remaining two-thirds interest in the seventeen-acre tract of land was conveyed to Empire. In October of 1967, a ten-acre tract of land adjacent to this seventeen-acre tract was conveyed to Empire and construction was begun on a manufacturing plant to produce wood mouldings. Actual production of wood mouldings began during July and August of 1968, and Empire's first recorded sale was made on September 19, 1968.

Empire filed its first corporate income tax return for the short period from July 1, 1968 to September 30, 1968. Other than this period, Empire has maintained its books on a fiscal-year basis beginning October 1 and ending September 30 of the following year. On July 31, 1968, the District Director of the Internal Revenue Service received an election by Empire dated July 16, 1968 to be treated as a Subchapter S corporation for federal income tax purposes effective as of July 1, 1968. Thereafter, the Internal Revenue Service advised Empire by form dated November 5, 1968, that the corporation's election had been approved effective as of October 28, 1968.

The six plaintiffs claimed a distributive share of Empire's losses for 1968 and 1969 as provided in Section 1374 of the Internal Revenue Code of 1954, 26 U.S.C. § 1374. Upon audit, these loss deductions were disallowed on the ground that Empire had failed to make a timely election to be treated as a Subchapter S corporation. This disallowance resulted in the following assessments:

### 1968

| Plaintiffs | Tax | Interest | Total |
|---|---|---|---|
| McCarty | $ 2,921.95 | $ 468.46 | $ 3,390.41 |
| Jones | 2,631.69 | 421.91 | 3,053.60 |
| Calhoun | 42,714.13 | 6,848.30 | 49,562.43 |
| Totals | $48,267.77 | $7,738.67 | $56,006.44 |

### 1969

| Plaintiffs | Tax | Interest | Total |
|---|---|---|---|
| McCarty | $ 3,570.84 | $ 358.24 | $ 3,929.08 |
| Jones | 4,691.71 | 470.67 | 5,162.40 |
| Calhoun | 54,213.56 | 5,439.18 | 59,652.74 |
| Totals | $62,476.11 | $6,268.09 | $68,744.22 |

The McCartys paid the assessment against them on December 27, 1971; the Jones paid their assessments on January 4, 1972; and the Calhouns paid on De-

cember 30, 1971. Plaintiffs' refund claim was denied in March of 1972, and these three actions which have now been consolidated followed. Jurisdiction in this court is pursuant to 28 U.S.C. § 1346(a)(1).

## OPINION

The issue posed by this case is whether plaintiffs made a valid election to be taxed as a Subchapter S corporation under section 1372 of the Internal Revenue Code of 1954. Briefly stated, Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1371–1379, allows an electing corporation to be taxed as a partnership. A corporation qualifying for Subchapter S status is not subject to corporate income taxes, but rather its undistributed taxable income is taxed to the shareholders pro rata or its net operating losses are deductible by the shareholders pro rata.

Of crucial importance to the disposition of this case is Section 1372(c)(1) which provides:

"An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations."

In effect at the time of the election in this case was Treas.Reg. § 1.1372–2 which provides in pertinent part:

"In the case of a new corporation whose taxable year begins after the first day of a particular month, the term 'month' means the period commencing with the beginning of the first day of the taxable year and ending with the close of the day preceding the numerically corresponding day of the succeeding calendar month, . . . . For purposes of this subparagraph, the first month of the taxable year does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur."

In light of the above quoted statute and regulation it is clear that Empire's purported election in July, 1968 to be treated as a Subchapter S corporation was not timely. Empire acquired a $25,000 loan on April 28, 1967, which if considered an asset, meant that Empire's election should have been filed within 30 days before or after this date. Even if this loan is considered a liability, Empire acquired an interest in a seventeen-acre tract of land on August 7, 1967, and the election should thus have been filed within 30 days of the acquisition of this asset. Plaintiffs contend that as of August 7, 1967 there were no stockholders to consent to the election, and it would not be realistic for a consent to be filed within thirty days of this date. The court cannot accept this argument since the statute and regulations are clear and unequivocal. There is no question but that Empire had acquired an asset by August 7, 1967, and the court must thus conclude that this was the latest date within thirty days of which Empire could file its election.[1] As to the argument that there were no shareholders to consent to the election as of August 7, 1967, it appears that by virtue of Treas.Reg. § 1.1372–3(c) (1964) a corporation may make a timely election and an extention of time will be given to shareholders to file their

---

1. In concluding that August 7, 1967 is the latest date acceptable for purposes of judging the timeliness of this election, the court is resolving certain doubts in plaintiffs' favor. It is certainly arguable that the technically correct date for purposes of electing Subchapter S status should be September 12, 1966 when the State of Virginia issued articles of incorporation to Empire since Va.Code Ann. § 13.1–52 (1973 Repl. Vol.) provides that the certificate of incorporation is conclusive evidence that the corporate existence has begun. It is also arguable that the $25,000 loan received in April of 1967 should be treated as a corporate asset and thus mark the first month of the taxable year for Subchapter S purposes. But, because defendant is seeking summary judgment doubts have been resolved in plaintiffs' favor.

consents.[2] See Bone v. Commissioner, 52 T.C. 913, 920 (1969). Thus there was no impediment, other than oversight, to Empire filing an election within 30 days of August 7, 1967.

■ The election filed in July, 1968, when Empire began active business operation, was clearly not timely, and this court is forced to conclude that the government was correct in disallowing the 1968 deductions.[3]

Plaintiffs have argued, as they must, that Empire should not have had to file an election until it was actively engaged in business. This would require that Treas.Reg. § 1.1372-2, quoted above, be read in the conjunctive rather than the disjunctive as it is written. There is neither reason nor authority for such a result, and other courts have rejected just such an argument. E. G., Rowland v. United States, 315 F.Supp. 596, 599 (W.D.Ark.1970).

Having concluded that Empire's election in July, 1968 was not timely for purposes of its first tax return, there remains the question of whether this election might be valid for its second taxable year. Decision of this question requires a determination of what Empire's taxable year actually was.

■ Plaintiffs have admitted that Empire maintained its books of account, beginning July 1, 1968 and continuing through October 1, 1968. Thereafter, the books were kept on an annual basis, beginning October 1 and ending September 30, of the following year. Accordingly, Empire's first tax return was filed for the period July 1, 1968 through September 30, 1968. But this court has determined that for purposes of Subchapter S treatment, Empire's taxable year began no later than August 7, 1967, when it acquired an interest in the seventeen-acre tract of land. The failure of Empire to keep books of account from August 7, 1967 until July 1, 1968 results in it being on a calendar-year basis by virtue of Section 441(g) of the Internal Revenue Code of 1954, 26 U.S.C. § 441(g). In addition, Section 442 of the Code provides that the permission of the Secretary is a necessary prerequisite to a taxpayer changing its accounting period. Since Empire did not obtain the Secretary's permission, it was incorrect in filing a return from July 1, 1968 to September 30, 1968.

■ Empire was also incorrect in filing a short-year return for the period from July through September, 1968 since Section 443(a) of the Code provides that a return for less than twelve months may be made only when a taxpayer has been in existence for a period of less then twelve months, or changes its annual accounting period with the permission of the Secretary, or has its taxable year terminated under Section 6851 of the Code. None of these conditions obtain with respect to Empire. Accordingly, Empire remained on a calendar-year basis, and its election in July, 1968, to be taxed as a Subchapter S corporation was not timely for any calendar year. Accord, Rowland v. United States, 315 F.Supp. 596, 600-601 (D.Ark.1970); Feldman v. Commissioner, 47 T.C. 329, 334 (1966).

■ The court is aware that the failure to adhere strictly to the time limits prescribed by the statutes and regulations in this case produces harsh results for these plaintiffs, and in an equitable sense the penalty suffered is not commensurate with plaintiffs' oversight. With this in mind, plaintiffs' arguments have been carefully considered, but to accept such arguments would require this court to disregard or modify the explicit requirements for filing. As sever-

2. The current regulation as found in Vol. 26 of the Code of Federal Regulations is not substantively different than it was in 1967. 5 CCH Std.Fed.Tax Rep. § 4447 H.

3. It is noteworthy that were this court to accept dates later than August 7, 1967 as the first month of Empire's taxable year, its election would still not be timely. For example, by October 2, 1967, there had been a stockholders meeting and stock was designated for issuance, but no election was filed within 30 days of this date. By November 7, 1967, the stock had actually been issued, but the election was still not filed until approximately eight months later.

al courts have noted, where a corporation seeking the benefits of Subchapter S status fails to adhere to the explicit procedures enacted by Congress, a court cannot supply what the corporation has failed to do. Rowland v. United States, supra; Feldman v. Commissioner, supra; Pestcoe v. Commissioner, 40 T.C. 195, 198 (1963); Simons v. United States, 208 F.Supp. 744, 746 (D.Conn. 1962). The establishment of the specific time limits for the filing of an election to be taxed under Subchapter S is a legislative rather than a judicial function. The privilege of a corporation being treated as a partnership for federal tax purposes is a matter of legislative grace for which the legislature may require adherence to certain specific procedures, and this court would exceed its function were it to alter those procedures. See J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 58, 61 S.Ct. 95, 85 L.Ed. 36 (1940).

For the reasons and authority stated above, this court is constrained to grant the government's motion for summary judgment in each of the three cases consolidated for purposes of this decision.

Orders will be entered accordingly.