**Ralph L. BRUTSCHE and Ingrid Brutsche, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Ruth L. FARLEY, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 76–1962.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 24, 1978.

Decided Oct. 11, 1978.

**438**

Joseph A. Sommer, Sommer, Lawler & Scheuer, Santa Fe, N. M., for petitioners-appellants.

William S. Estabrook, III, Atty. Tax Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Crombie J. D. Garrett, Attys., Tax Div., Washington, D. C., with him on the brief), for respondent-appellee.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This consolidated appeal[1] turns on a determination of whether the taxpayers made a valid Subchapter S election. If they did, they are liable for any properly assessed tax deficiencies arising from corporate activities. If they did not, the corporation, not the individual taxpayers, is liable. The case is complex only because prior to this litigation the IRS claimed the election was not valid and now claims it was, while the taxpayers prior to this litigation claimed the election was valid and now claim it was not.

Briefly stated, Subchapter S of the Internal Revenue Code allows an electing corporation to be taxed similarly to a partnership.[2] A qualifying Subchapter S corporation is not subject to corporate income taxes, but rather its taxable income is taxed to the shareholders pro rata or its net operating losses are deductible by the shareholders pro rata. The Commissioner of Internal Revenue claims that certain items of gross income were realized by Thunder Mountain Construction Company (T.M.) in fiscal year 1969, and that, because T.M. was a Subchapter S corporation, such income was directly taxable to taxpayers as T.M. shareholders. Thus, the determination of Subchapter S status controls whether T.M. itself or its shareholders must bear the burden of any tax deficiency resulting from a finding of additional corporate income.

Taxpayers complain the Tax Court erred in finding they made a valid election to have T.M. taxed as a Subchapter S corporation. They argue the attempted election was invalid because (1) the filing of the election was not timely, and (2) the neces-

---

1. Taxpayers appeal from a decision of the Tax Court upholding various deficiency judgments assessed against them as individual shareholders by the Commissioner. *Brutsche v. Commissioner,* 65 T.C. 1034 (1976). A detailed statement of facts is included in the opinion of the Tax Court. *Id.* at 1035–47.

2. I.R.C. §§ 1371–1379.

sary shareholders' consent to the election was not properly filed.

*Timely Election*

■ Section 1372 of the I.R.C. provides that a Subchapter S election "may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month." To be effective such election must be timely and in strict compliance with statutory and regulatory requirements.[3] Regulations promulgated by the Secretary of the Treasury clarify that "the first month of the taxable year of a new corporation does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur."[4]

■ The initial issue then is whether T.M.'s Treasury Form 2553 election, filed on June 26, 1961, was made within the first month of its taxable year as a new corporation. Finding that T.M. had shareholders by May 1, 1961, and conducted business by May 26, 1961, the Tax Court concluded that the June 26 election was not made within the first month of T.M.'s taxable year as required by law and was hence invalid for that taxable year. We agree. Where adherence to specific procedures within a specified time is required, a court cannot supply what the corporation has failed to do.[5]

■ Having concluded that T.M.'s election in June 1961 was not timely for purposes of its first taxable year, there remains the question whether this election might be valid for its second taxable year and all subsequent years including fiscal 1969. Resolution of this question requires a determination of what T.M.'s taxable year actually was. Section 441(b)(1) of the I.R.C. defines "taxable year" as "the taxpayer's annual accounting period, if it is a calendar year or a fiscal year." The Tax Court found that T.M. came into legal existence on the date of its incorporation on March 29, 1961, and that it sometime thereafter adopted a fiscal year ending June 30 as its annual accounting period. The Tax Court noted that "[e]ven though the record is inadequate to determine how Thunder Mountain adopted a fiscal year ending June 30, the record is clear it did use such a fiscal year in keeping its books and filing its Federal income tax returns."[6] There is nothing in the record that indicates this finding of the Tax Court was erroneous. T.M. filed all its tax returns and prepared its financial statements on a July 1 to June 30 fiscal year accounting period.

We therefore agree with the Tax Court that the election, while invalid for T.M.'s short taxable year May 1, 1961, through June 30, 1961, was nevertheless timely for T.M.'s taxable year July 1, 1961, to June 30, 1962. Section 1372(c)(1) specifically provides that an election may be made "for *any* taxable year . . . at any time during the month preceding such first month." (Emphasis added.) Since the June 26, 1961 filing was within the month preceding the first month of T.M.'s July 1 to June 30 taxable year, the election was timely.

■ Taxpayers argue that, since a return was not made for the short taxable year ending June 30, 1961—as it could have been under I.R.C. §§ 441(b)(3), 443—T.M.'s first taxable year was a 12-month fiscal year beginning on March 29, 1961, and that its June 26, 1961 election was untimely. This argument fails for two reasons. First although I.R.C. § 441(b)(1) allows a taxpayer to use a fiscal year accounting period as his taxable year, I.R.C. § 441(e) specifically limits the term "fiscal year" to mean a

---

**3.** *Calhoun v. United States,* 370 F.Supp. 434 (W.D.Va.1973); *Rowland v. United States,* 315 F.Supp. 596 (W.D.Ark.1970); Joseph W. Feldman, 47 T.C. 329, 332–33 (1966); William Pestcoe, 40 T.C. 195, 198 (1963).

**4.** Treas. Reg. § 1.1372–2(b)(1), T.D. 6500, 25 F.R. 12055 (Nov. 26, 1960).

**5.** Note 3 *supra; see J. E. Riley Inv. Co. v. Commissioner,* 311 U.S. 55, 58–59, 61 S.Ct. 95, 85 L.Ed. 36 (1940).

**6.** 65 T.C. at 1055.

period of 12 months "ending on the last day of any month other than December." If, as taxpayers claim, March 29 is the beginning date of a fiscal year, it is obvious the fiscal year ends on March 28. Since March 28 is not the last day of March, it could not possibly mark the end of any fiscal accounting period cognizable by the Code as determinative of T.M.'s "taxable year." Second, T.M.'s own failure to file a return for the short taxable year, May 1, 1961, to June 30, 1961, surely does not support taxpayers' view that the proper taxable year was other than the fiscal period it utilized over a nine-year period. Accordingly, the Subchapter S election filed June 26, 1961, was timely with respect to T.M.'s fiscal year commencing July 1, 1961. *See* Rev.Rul. 66–68, 1966–1 C.B. 197.

*Shareholders' Consent*

Even though the Form 2553 election may have been timely, it would nevertheless be defective and invalid for the fiscal year ending June 30, 1962, and all subsequent years, unless accompanied by the requisite shareholders' consent statement. I.R.C. § 1372(a) provides that "[s]uch election shall be valid only if all persons who are shareholders in such corporation . . . on the day on which the election is made . . consent to such election." The Secretary's regulations further specify that the consent statement "shall set forth the name and address of the corporation and of the shareholder, the number of shares of stock owned by him, and the date (or dates) on which such stock was acquired." [7] Failure to file a timely consent will not be fatal to a timely election if a proper consent is filed within any extended period of time as may be granted by the IRS.[8]

Taxpayers filed a timely shareholders' consent statement along with their Form 2553 Subchapter S election on June 26, 1961. That statement was in the form of a letter signed by all of T.M.'s shareholders, including appellants. The letter read:

We, the undersigned shareholders, do hereby consent to the election of Thunder Mountain Land Company, Inc. to be taxed as a small business corporation under Section No. 1372, Internal Revenue Code.[9]

By letter dated September 8, 1961, an IRS district office advised T.M.:

Your Form 2553, Election by Small Business Corporation and Statement of Shareholders Consent are considered incomplete due to the following:

Number of shares issued to each shareholder.

Please return this letter with the information requested within 20 days from date shown above, otherwise the Election will not become effective.[10]

Consequently, for T.M.'s election to be valid and effective for its taxable year ending June 30, 1962, and all subsequent years, its shareholders had to consent to the election in the appropriate manner on or before September 28, 1961, as allowed by the IRS' extension of time.

■ Neither the Tax Court nor this court has found any direct evidence in the record that such later consent was filed by the shareholders. However, the Tax Court held that the election was valid by reasoning as follows:

The inference is that such a later consent was filed since a copy but not the original of the letter extending the time for the information to be filed was in [taxpayers'] records. However, respondent's determination that Thunder Mountain was an electing small business corporation is presumptively correct and petitioners have the burden to show that the corporation's shareholders did not properly file consents to the corporation's election if they rely on this fact to show that the corporation's election was invalid. Rule

---

7. Treas. Reg. § 1.1372–3(a), T.D. 7012, 1969–2 C.B. 246.

8. *Id.* § 1.1372–3(c), T.D. 7012, 1969–2 C.B. 247.

9. Exhibit 19–S.

10. Exhibit 40.

142, Tax Court Rules of Practice and Procedure.[11]

The Tax Court finding of a valid shareholder consent is thus based on an inference and the procedural allocation of the burden of proof.

It is apparently the practice of the IRS to send shareholders both the original and a carbon copy of letters such as the one dated September 8, 1961. As the letter specified, the compliance necessary to effectuate a valid election included returning the original of the letter to the IRS by September 28, 1961, together with the information requested. Taxpayers introduced a carbon copy of the September 8 letter at trial in the Tax Court and testified that, despite a diligent search, the original of this letter could not be found. As to both the IRS' carbon copy of this letter and any subsequent response by taxpayers, the Commissioner stipulated:

> [W]e contacted the Austin Service Center in an attempt to locate the documents relating to the election form 2553 and there is no record. . . . [W]e were unable to find a record of letters or correspondence attached to this 2553 or supposedly with the file. . . . [W]e have searched diligently through our administrative files in our possession and we are unable to find it.[12]

Earlier in the trial the Commissioner reported to the Tax Court that he could find "absolutely no verification" that the original of the September 8, 1961 letter was returned to the IRS together with the requisite shareholder consent.[13] Taxpayer Ralph Brutsche testified he had no recollection of responding to the letter giving 20 days to file a proper consent.[14]

In admitting taxpayers' carbon copy of the September 8 letter, the Tax Court ruled:

I am going to receive this as the copy of a document which was retained in this taxpayer's files, obviously sent with an original because the original was to be returned and for no other purpose. *It doesn't prove whether the original was ever returned, what compliance was ever made or anything.*[15]

We agree with this initial ruling, and reject the Tax Court's later legal conclusion—stated in its opinion, and quoted above—that an inference of compliance flows from the fact that a copy but not the original letter extending the filing time was found in taxpayers' records. Such an inference is a product of unwarranted speculation.

■ The Tax Court also based its finding of a valid shareholder consent on Rule 142 of the Tax Court Rules of Practice and Procedure. Rule 142 provides generally that "[t]he burden of proof shall be upon the petitioner" to show that the Commissioner's determination of tax deficiency is erroneous. Under the circumstances of this case, taxpayers have the initial burden of proving that the Subchapter S election was invalid on the grounds that the required shareholders' consent statement was not filed.[16] The Tax Court ruled that taxpayers did not carry their burden. We disagree.

■ Even though the Commissioner's determination of this issue is presumptively correct, taxpayers carried their burden in the Tax Court insofar as it is possible to prove a negative. The IRS rejection letter of September 8, 1961, is direct evidence that the shareholders' original attempt to consent to T.M.'s Subchapter S election was unsuccessful. In order to show that no later consent was filed conforming to the demands of the IRS rejection letter, taxpayers had to prove the nonexistence or nonoccurrence of any such later consent.

---

11. 65 T.C. at 1058.

12. Record, vol. 2, at 86.

13. *Id.* at 23.

14. *Id.* at 89.

15. *Id.* at 96–97 (emphasis added).

16. *See Brody v. Commissioner,* 34 T.C.M. (CCH) 310 (1975), *appeal dismissed* (2d Cir. Oct. 19, 1976); Frank E. Poulter, 26 T.C.M. (CCH) 1092 (1967), *aff'd,* 397 F.2d 415 (4th Cir. 1968).

The nonexistence of a document or non-occurrence of an event can be shown only by inferences drawn from circumstantial evidence. Rule 143 of the Tax Court Rules of Practice and Procedure incorporates by reference the rules of evidence generally applicable in the federal courts, including Rule 803(10) of the Federal Rules of Evidence. This rule provides that

> the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency [may be proved by testimony] that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

The failure of T.M.'s shareholders to submit any later consent was proven by all the direct and circumstantial evidence possibly available. The Commissioner testified that "absolutely no verification" of such later consent could be found. The Commissioner also stipulated that he was unable to find the correspondence in question despite a diligent search of his administrative files. Moreover, taxpayer Brutsche testified directly that, as president of T.M., he did not respond to the rejection letter. There is absolutely no evidence in the record to support a contrary conclusion. If evidence of a failure of the IRS to locate a shareholders' consent statement after diligent search of its records does not constitute evidence that the document was not filed, it is difficult to perceive how the United States ever carries the burden of proof in a criminal prosecution for willful failure to file a return under I.R.C. § 7203.

### Election and Estoppel

After taxpayers had presented their case to the Tax Court, the Commissioner rested without presenting any defense. However, with the consent of taxpayers, he amended his answer to plead affirmatively the defense of estoppel on the basis that the government had relied to its detriment on the documents filed on June 26, 1961.[17] Because the Tax Court found the attempted election valid, it did not consider the estoppel defense in its opinion.[18] The Commissioner has not cross-appealed on this issue, but he raises in his brief the analogous doctrine of election.

■ The doctrine of election and the doctrine of estoppel are not the same.[19] Like estoppel, however, the doctrine of election is an affirmative defense which must be pleaded in the Tax Court.[20] Since the doctrine of election was neither pleaded nor decided below, we are without power to consider the matter on appeal.[21]

Although it was properly pleaded in the Tax Court, no findings of fact or conclusions of law were rendered with respect to the issue of estoppel. Because the Commissioner rested at the close of taxpayers' case, choosing not to present any evidence in support of his defense, the record is closed. Despite the temptation to decide such issues from the record, we note that

> [t]he function of the court is to decide whether the correct rule of law was applied to the facts found; and whether there was substantial evidence before the [Tax Court] to support the findings made. . . . If the [Tax Court] has failed to make an essential finding and the record on review is insufficient to provide the basis for a final determination, the proper procedure is to remand the case for fur-

17. Record, vol. 2, at 116.

18. 65 T.C. at 1059.

19. For a discussion of the distinction between the two, see 10 J. Mertens, *Law of Federal Income Taxation* § 60.19 (1976).

20. *See* Rule 39 of the Tax Court Rules of Practice and Procedure, which requires that a party

"set forth in his pleading any matter constituting an avoidance or affirmative defense."

21. *See Helvering v. Salvage,* 297 U.S. 106, 109, 56 S.Ct. 375, 80 L.Ed. 511 (1936); *General Utilities & Operating Co. v. Helvering,* 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154 (1935); *Commissioner v. Callner,* 287 F.2d 642, 645 (7th Cir. 1961); *Gaylord v. Commissioner,* 153 F.2d 408, 416 (9th Cir. 1946).

ther proceedings before the [Tax Court]. . . . *And the same procedure is appropriate even when the findings omitted by the [Tax Court] might be supplied from examination of the record.*[22]

██ Having found that T.M.'s shareholders failed to file a proper shareholders' consent, the deficiency judgments premised on a valid Subchapter S election cannot stand. Since the doctrine of election was not raised in the Tax Court, it cannot be used as an alternative basis for upholding the judgments. Because we are without power to consider the doctrine of estoppel as an initial trier of fact, the case is remanded to the Tax Court for findings of fact from the record on the estoppel issue. In view of our determination of the Subchapter S election issue, we need not examine the many other issues relating to the proper computation of any claimed deficiency.

The decision of the Tax Court upholding the Commissioner's deficiency judgments against taxpayers accordingly is set aside and the case remanded for further proceedings not inconsistent with this opinion.

**22.** *Helvering v. Rankin,* 295 U.S. 123, 131–32, 55 S.Ct. 732, 79 L.Ed. 1343 (1935) (emphasis added) (footnotes omitted); *General Utilities & Operating Co. v. Helvering,* 296 U.S. at 206, 56 S.Ct. 185.