GARRETT & GARRETT, P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garrett & Garrett, P.C. v. Commissioner
Docket No. 9034-92
United States Tax Court
T.C. Memo 1993-453; 1993 Tax Ct. Memo LEXIS 458; 66 T.C.M. (CCH) 905; September 28, 1993, Filed *458 Decision will be entered under Rule 155. For petitioner: William Allan Garrett and Joseph M. Garrett (officers) For respondent: John C. McDougal
KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By notice of deficiency dated March 9, 1992, respondent determined with regard to petitioner's 1988 corporate income tax a deficiency in the amount of $ 11,886. After concessions, [1] the sole issue for decision is whether petitioner has made a valid election to be an S corporation under section 1362 for the year 1988. Unless otherwise indicated, statutory references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. *459 FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. When this petition was filed, petitioner's principal place of business was Danville, Virginia. Petitioner, Garrett & Garrett, P.C., is a legal professional corporation, incorporated October 5, 1987, under the laws of Virginia. Petitioner's two shareholders/attorneys are William Allan Garrett (William) and his son, Joseph M. Garrett (Joseph). William also serves as petitioner's president, and his son as its vice president. William's wife, Anne Garrett (Anne), holds the official positions of secretary and treasurer as well as being petitioner's receptionist and bookkeeper. Petitioner's bylaws were executed October 6, 1987. Article VII of the bylaws provides that "The corporation elects to be taxed under Subchapter "S" of the Internal Revenue Code of 1954". A Form 2553, which notifies the Commissioner of a taxpayer's desire to make the small business corporation election, was completed in part by William, Anne, and Joseph. William signed his name as petitioner's president and dated it January 10, 1988. [2]
*460 Form 2553 was initially mailed by ordinary mail by petitioner on January 11, 1988 (first mailing). William, Anne, and Joseph, in addition to another individual who did not testify, were present during the actual mailing of Form 2553. During lunch they all walked down eight floors from their offices to the lobby of the Masonic Temple building. William placed Form 2553 in a blue post office box. On the face of Form 2553, petitioner designated that its S election was to become effective beginning January 1, 1989. Petitioner also selected December 31, 1989, as its tax yearend. However, with this first mailing, Form 2553 was facially incomplete in two respects. An unnumbered, unlettered box requesting the "Number of shares issued and outstanding" was left blank. Also blank were lettered sections C through G, which relate to shareholder consents. These sections request the following information: The number of shares owned by each shareholder, their signatures indicating consent to the election, their respective Social Security numbers, and when their tax year ended. Sections C through G were left blank because William could not understand why respondent would be interested in *461 the stockholdings and thought it was none of respondent's business. Several weeks later, respondent returned to petitioner the original incomplete Form 2553 and requested proper completion. Respondent has no record of receiving or responding to petitioner's first mailing of Form 2553, and petitioner did not retain a copy of either its initial Form 2553 filing or respondent's cover letter requesting additional information. Petitioner completed sections C through G on its returned original Form 2553 as directed by respondent but did not complete the unnumbered, unlettered box titled "Number of shares issued and outstanding". Both shareholders added December 31, 1989, as their personal tax yearend in this second mailing. Petitioner returned the original Form 2553 to respondent via certified mail dated March 30, 1988. Respondent stamped the certified return receipt on April 4, 1988. Respondent thereafter acknowledged receipt of Form 2553 in a letter addressed to petitioner dated April 27, 1988. The next correspondence petitioner received from respondent was dated May 2, 1988. It informed petitioner that the unidentified box titled "Number of shares issued and outstanding" still *462 had not been completed. In this correspondence, respondent granted petitioner an extension of 30 days from May 2, 1988, in order to complete the missing information. Even though this information remained lacking, respondent, in a letter dated May 27, 1988, subsequently accepted the election to subchapter S status for the year 1989. Respondent also informed petitioner that it should file a regular corporate tax return for 1988 since its S election would not be effective until 1989. Petitioner employed a certified public accountant (CPA) to prepare its 1988 corporate income tax return. Petitioner filed a 1988 Form 1120S, U.S. Income Tax Return for an S Corporation. On page 1 of this return, January 1, 1989, is given as the effective date of election as an S corporation. Subsequently, respondent determined in the notice of deficiency that petitioner had not made a valid S election for 1988. OPINION The issue of whether petitioner filed a valid S election for 1988 turns on whether petitioner properly, as well as timely, filed its election within the strict rules of section 1362. 1. Complete and Timely for 1988
Section 1362(a)(1) allows a small business corporation as *463 defined under section 1361 to elect S corporation status. The election is optional, and a taxpayer who wishes to take advantage of its privileges must comply strictly with its provisions. Rowland v. United States, 315 F. Supp. 596, 600 (W.D. Ark. 1970). The rigid inflexibility with which its requirements are enforced has been time tested and proven. Combs v. Commissioner, T.C. Memo. 1989-206, affd. without published opinion sub nom. Nally v. Commissioner, 907 F.2d 151 (6th Cir. 1990). The timing of an S election is critical. Congress imposed strict time limits so that a corporation must make an election before it can predict its profitability for the year with any certainty. These time limitations serve to prevent taxpayers from using subchapter S status solely as a tax avoidance mechanism. McClelland Farm Equip. Co. v. United States, 601 F.2d 365, 367 (8th Cir. 1979); H. Rept. 95-1445 (1978), 1978-3 C.B. (Vol. 1) 181, 278. An S election can be made for any taxable year at any time during the preceding year, or it must be made *464 on or before the 15th day of the 3d month for the current taxable year. Sec. 1362(b)(1). Here, the final day for petitioner to file a timely S election (without extension) for 1988 would therefore have been March 15, 1988. Section 7502(a)(2) considers elections as "filed" on either the date the Service receives Form 2553 or on the date of a U.S. postmark if that will allow the filing to be timely. Petitioner argues that the fact that respondent has no record of receiving an election until after the statutory date for filing is not conclusive that Form 2553 was not filed timely. Ober v. Commissioner, T.C. Memo. 1980-513. When the date of filing cannot be established by a tangible postmark, this Court has considered indirect testimonial evidence of mailing. Mitchell Offset Plate Serv., Inc. v. Commissioner, 53 T.C. 235 (1969). Petitioner contends that where a taxpayer for any reason has not retained tangible evidence of a mailing and respondent also has no record of receiving such mailing, the testimony of credible witnesses, in addition to some other particularly telling fact, can establish that a mailing has in *465 fact occurred. Petitioner has the burden of proving timely mailing. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). This Court has considered the combined testimony of petitioner's witnesses, Form 2553, and the correspondence which was mailed by respondent in response to petitioner's mailings of Form 2553. We find the testimony of petitioner's witnesses credible, and we therefore find that the initial mailing of Form 2553 was January 11, 1988. However, although petitioner proves it mailed its S election form initially on January 11, 1988, this Form 2553 did not include the required shareholder consents and was not complete until its second mailing of March 30, 1988. This fact is determinative for this case. An S election is valid only if all persons who are shareholders of the corporation at the time of election consent to the corporation's decision to be taxed as an S corporation. Sec. 1362(a)(2). In addition, an authorized representative of the corporation must also sign Form 2553 giving corporate consent to the election. Sec. 6037; sec. 1.1362-6(a)(1), Income Tax Regs. Consent is crucial to the S election. Fratantonio v. Commissioner, T.C. Memo. 1988-158. *466 The election goes to the heart of a taxpayer's tax status. It is pivotal in determining the taxability of both the corporation and its shareholders. Therefore, the courts cannot impute consent. Smith v. Commissioner, T.C. Memo. 1988-18. Shareholder consent must be given on Form 2553. Rockwell Inn, Ltd. v. Commissioner, T.C. Memo. 1993-158. Form 2553 requests each shareholder to indicate his name, address, taxpayer identification number, the number of shares owned and date(s) acquired, his tax yearend, and the shareholder's signature which will bind him to the election. Sec. 1.1362-2(a), Income Tax Regs. The election is not valid if any consent required is not timely filed. Sec. 1.1362-2(b), Income Tax Regs.[3] However, an election that is timely filed for any taxable year, and that would be valid except for the failure of any shareholder to file a timely consent, is not invalid for such reason, only if respondent grants the taxpayer an extension to file such consent and the consent is filed within the time period granted. *467 As noted, petitioner's deadline for filing a valid request to S status for the year 1988 under section 1362(b)(1) would have been at any time after it began the first taxable year, during 1987, and up until March 15, 1988. Sec. 1.1362-1(a), Income Tax Regs. Even assuming petitioner filed Form 2553 on January 11, 1988, the essential shareholder consents and the number of shares issued and outstanding remained missing until petitioner completed the shareholder consent information for its March 30 mailing. That is 15 days too late for a valid 1988 S election. As best this Court is able to make out, petitioner is arguing that respondent gave petitioner an extension to meet the March 15 election filing deadline or that respondent prevented petitioner from timely electing S status because the Government retained Form 2553 during the election period. These arguments, if successful, could have made petitioner's March 30 filing timely for 1988, assuming Form 2553 was proper in all other respects. Respondent did give petitioner an extension, but it related only to the March 30, 1988 (second), filing of Form 2553, not to any January 11, 1988 (first), mailing. The power or authority to *468 extend a filing deadline does not create an extension where there is no evidence that the taxpayer requested such an extension, that an extension was granted, or that the Commissioner has refused to grant an extension. Kean v. Commissioner, 469 F.2d 1183 (9th Cir. 1972), affg. in part and revg. in part 51 T.C. 337, 345 (1968). Here, unlike Kean, petitioner has shown no reasonable cause for not timely filing the required shareholder consent information, nor has petitioner shown that it ever requested an extension to file such consents before the March 15 mailing deadline. Petitioner unjustifiably relies on McClelland Farm Equip. Co. v. United States, 601 F.2d 365 (8th Cir. 1979), for the proposition that the Government prevented petitioner from timely filing its S election by retaining its Form 2553 during the election period. This case aids only those taxpayers who have prematurely filed a properly completed Form 2553, as opposed to filing late, as petitioner did here. Also, unlike the case at bar, respondent in McClelland did not correspond with the taxpayer regarding its election. *469 It is also significant to note that this case was decided under prior law when there was but a narrow 2-month window during which taxpayers could elect S status. An early election does not give taxpayers time to predict profitability with any certainty and would not contravene Congress' policy against tax avoidance, as there could be no harm to the Government. Petitioner herein does not allege and did not prove that respondent retained petitioner's Form 2553 through the end of the election period. Nothing helps petitioner here in extending its S election deadline. The election for 1988 fails for lack of timely completeness regarding the shareholder consent information. [4]
*470 2. Proper Filing for 1988
Even assuming petitioner had filed Form 2553 timely as well as completely, respondent correctly points out that petitioner's Form 2553 unambiguously requests an election of S status effective beginning January 1, 1989. Petitioner agrees, but argues that its "clerical" error was a unilateral mistake that can be corrected by this Court. Petitioner wants this Court to change an unambiguously and unequivocally elected effective date from 1989 to 1988. This Court has neither the power nor the inclination to make such a change. Petitioner cites Jansen v. United States, 170 Ct. Cl. 346, 344 F.2d 363, 370 (1965), in support of the proposition that petitioner's unilateral mistake in electing an effective date of 1989 instead of 1988 can be corrected by this Court. This case does state a principle of contract law that allows relief to be granted for unilateral mistakes when the other party knew or should have known of the mistake. Even assuming contract law principles apply to subchapter S elections, given the facts herein, respondent could not have known that petitioner mistakenly elected a beginning date *471 of 1989 instead of 1988. To the contrary, respondent informed petitioner that it should file a regular corporate return for 1988 since its indicated S election was not effective until 1989. Congress has directed that the Treasury Department regulate the manner of making a subchapter S election, and the applicable regulations are neither vague nor ambiguous. Rowland v. United States, 315 F. Supp. 596, 600 (W.D. Ar. 1970). To be effective, such election must be timely and in strict compliance with statutory and regulatory requirements. Brutsche v. Commissioner, 585 F.2d 436, 439 (10th Cir. 1978), revg. on another issue and remanding 65 T.C. 1034 (1976). Section 1362 allows little room for excuses or deviations. There are no provisions for leniency even though the results may prove harsh. Pestcoe v. Commissioner, 40 T.C. 195, 198 (1963). The various requirements of an S election are clear and within a taxpayer's control. Also, extraordinary harshness does not result where the entire problem has been caused by the taxpayer's own mistake. Combs v. Commissioner, T.C. Memo. 1989-206. *472 This Court cannot supply what a taxpayer has failed to do. Rowland v. United States, supra.
Section 1362(c) specifically states that an S election shall be effective for the taxable year of the corporation for which it is made. Petitioner seems to be arguing that its intent to elect an effective date of 1988 is apparent from its bylaws and from the date its president signed Form 2553, that being January 10, 1988. Corporate bylaws are not an effective way of making an S election. The fact that a taxpayer resolved to elect to be taxed as a small business corporation was not an election, but only a decision to elect, certainly not in compliance with the statute. Pestcoe v. Commissioner, supra.The signing of corporate consent also does not indicate an intent to elect a particular effective date; it indicates only that the corporation consents to the S election. Here, petitioner designated the S election effective date as beginning January 1, 1989, and also indicated a tax year ending December 31, 1989. Petitioner also had at least two prior occasions on which to notice its "mistake" and attempt a correction. *473 Petitioner received the original Form 2553 back from the Service and was directed to complete the shareholder information. In addition to other information, the shareholders, both of whom represent petitioner in official capacities, would be required to state when their tax years ended. This would mean another look at Form 2553 and a considered decision on the part of both shareholders. These shareholders indicated that their tax years ended December 31, 1989, a decision consistent with the corporation's earlier stated effective date of election. Also, petitioner's CPA signed his name as preparer of petitioner's 1988 Form 1120S, Income Tax Return for an S Corporation, on April 5, 1989. On page 1 of Form 1120S, the date of election as an S corporation is stated as January 1, 1989. Even the CPA knew when the election was to begin, yet he inconsistently prepared an S corporation tax return for 1988. Only two possible conclusions can be drawn from this inconsistency: (a) The CPA missed the inconsistency and never notified petitioner, or (b) perhaps he did notify petitioner but was instructed to proceed in spite of the inconsistency. Petitioner should have reviewed the return *474 for correctness before filing it. Any of these occasions should have put petitioner on notice as to a problem with the effective date of election; however, petitioner never attempted to correct the mistake or to request an extension. We cannot aid petitioner when its mistakes are so numerous. To hold otherwise would contravene the very essence of an S election, which requires notice to respondent of the effective date of election within a designated time frame so as to preclude the use of subchapter S as a tax avoidance mechanism. Petitioner is bound by the effective date on the election form it filed. To reflect the foregoing and concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Respondent disallowed in whole or in part deductions relating to auto, labor, insurance, and miscellaneous expenses claimed by petitioner on its return; petitioner concedes these determinations. Respondent also disallowed petitioner's claimed repair expenses, which respondent determined were capital in nature. Respondent further determined that, in lieu of a deduction for repair expenses, petitioner would be entitled to a depreciation deduction of $ 759. Respondent now concedes that petitioner was entitled to the deduction for repair expenses. Due to respondent's concession, the depreciation allowance determined in the notice of deficiency is no longer applicable.↩
2. Both parties stipulated that the copy of Form 2553 attached to the stipulation was facially complete. We cannot accept this stipulated fact. Upon closer examination, we note that the small unnumbered, unlettered box requesting the "Number of shares issued and outstanding" is blank. According to Rule 91(e), stipulations shall be binding on the parties. One exception to this Rule gives the Court discretion not to be so bound when facts presented at trial or disclosed by the record are clearly contrary to those stipulated by the parties. Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976); Seatree v. Commissioner, 25 B.T.A. 396, 401 (1932), affd. 72 F.2d 67↩ (D.C. Cir. 1934).
3. These provisions were amended in 1992 and are now sec. 1.1362-6(b)(1) and (3), Income Tax Regs.↩
4. Respondent has accepted the S election for 1989, and it does appear that the number of shares issued and outstanding is easily discernable by adding the number of shares of stock owned by each of the two shareholders. This Court has found Form 2553 completely and properly filed when the alleged missing information could be easily discernable from a cursory review of the form itself. Leve v. Commissioner, T.C. Memo. 1985-255↩. Prior to Mar. 15, 1988, however, petitioner's Form 2553 did not contain the shareholders' signatures or other necessary shareholder consent information.