FRANK A. AND MARY L. FRATANTONIO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fratantonio v. Commissioner
Docket No. 45722-85.
United States Tax Court
T.C. Memo 1988-158; 1988 Tax Ct. Memo LEXIS 191; 55 T.C.M. (CCH) 611; T.C.M. (RIA) 88158; April 18, 1988. Larry Kars, for the petitioners. Ronald F. Hood, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' Federal income taxes for the taxable year 1981 of $ 8,336. The deficiency resulted from respondent's determination that Kent Video Tape and Disc, Ltd. ("Kent"), a corporation in which petitioners were shareholders, was not an electing small business corporation as defined in section 1371(b) [1] of the Internal Revenue Code. The sole issue for decision is whether Kent filed a valid small business corporation election for the taxable year 1981. *192 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated by this reference. Frank A. Fratantonio and Mary L. Fratantonio ("petitioners") resided in Holden, Massachusetts when they filed their petition. Petitioners were shareholders in Kent, which was in the business of producing a series of educational tapes, generally referred to as "The How To" series. On their 1981 tax return, petitioners reported items from Kent consistent with subchapter S treatment, comprised of a corporate loss of $ 13,281 and an investment tax credit of $ 2,820. In 1981, Mr. Seymour Klempner ("Klempner") was Treasurer of Kent, and Mr. Murray Schmidt ("Schmidt") was President of Kent. Both Schmidt and Klempner were accountants in the firm of Klempner & Schmidt. Most of the shareholders, including petitioners, were clients of the firm, which dissolved in 1982. At some point, Kent had 15 shareholders. On July 1, 1981, a Form 2553 (Election by a Small Business Corporation) was filed by Schmidt and received at the Internal Revenue Center in Ogden, Utah. On the Form 2553, Schmidt filled in the section entitled "Number of Shares *193 Issued and Outstanding" as 3,000 shares, but listed himself as the only shareholder owning a total of 200 shares as of June 1, 1981. Under that section entitled "Shareholder's Statement of Consent," only Schmidt's signature appeared. By letter dated July 15, 1981, from the Internal Revenue Service Center at Ogden, Kent was notified that the Form 2553 filed on July 1, 1981, was incomplete and that additional information was required. Specifically, the Internal Revenue Service wanted an explanation of the difference between the number of shares issued and outstanding, i.e., 3,000 shares, and the total number of shares listed for the shareholders, one consenting shareholder owning 200 shares. The letter further stated that Kent should "complete [the] Form 2553, attach any documents requested, and return it with this letter within 45 days from the date of the letter." It also stated that if a response was not received within this period, the election might be denied. On December 28, 1981, more than 4 months after the 45-day expiration, Schmidt wrote to the Internal Revenue Service Center in Ogden, Utah and stated that there were 15 shareholders with 200 shares each for a total *194 of 3,000 shares issued and outstanding. By letter dated January 21, 1982, from the Internal Revenue Service, Kent was notified that the Form 2553 filed by Kent was incomplete and untimely, as it had not been completed within 75 days from the beginning of the taxable year. Kent was notified to advise its shareholders to file their returns as though Kent had not filed a Form 2553. On June 24, 1982, Kent filed a Form 1120S (U.S. Small Business Corporation Income Tax Return) for the taxable year 1981 with the Internal Revenue Service Center in Ogden, Utah. Kent's Form 1120S was examined by the Internal Revenue Service in Reno, Nevada, and the Internal Revenue Service disallowed Kent's subchapter S status for the reason that the election was invalid. OPINION We must decide whether Kent validly elected subchapter S status. Petitioners argue that a valid Form 2553 was filed by Kent, and received by the Internal Revenue Service on July 1, 1981. Petitioners argue, among other things, that while a mistake was made concerning the number of shares issued and outstanding, Schmidt was in fact the only shareholder of Kent at the time the election Form 2553 was first filed. They contend *195 that the information provided on Schmidt's December 28, 1981, letter was also in error. Moreover, Petitioners urge that this information was and is not relevant to the validity of the subchapter S election. Respondent argues to the contrary. [2] Respondent contends that the consent of all the shareholders in a corporation is necessary in order for a small business corporation to elect to be an "S" corporation, that a discrepancy existed between the number of shares listed as issued and outstanding (3,000) and the number of shareholder consents (one shareholder consent of owner of 200 shares), that the Internal Revenue Service specifically requested an explanation of the difference, and that no explanation was given by petitioners until 5-1/2 months after the Internal Revenue Service letter and 4 months after the expiration of the 45-day time period given to Kent by the Internal Revenue Service for the reply. Respondent further disputes the fact that Schmidt was in fact the only shareholder at the time the election was filed and suggests that the evidence will not substantiate whether there were 15 shareholders at any time, 14 of whom had not consented to the election. Respondent *196 therefore challenges the validity of the election. We agree with respondent. Section 1372(a) of the Internal Revenue Code provides that an "election shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election." Moreover, the regulations provide that the consent statement "shall set forth the name and address of the corporation and of the shareholder, the number of shares of stock owned by him, and the date (or dates) on which such stock was acquired." Section 1.1372-3(a), Income Tax Regs.
In the instant case, petitioners Form 2553 listed 3,000 shares issued and outstanding, but only one shareholder consent of 200 shares. It was natural that questions would arise concerning the consent of the other shareholders. Petitioners *197 offer both argument and explanation as to why this discrepancy should not nullify the election. First, petitioners submit that the discrepancy was the result of a confusion over the concept of authorized versus outstanding shares of stock. Petitioners argue that despite this error, Schmidt was the only shareholder at the time of the election, and that only later, on or about December 18, 1981, did Kent accept 15 new shareholders. Petitioners then continue that when Schmidt wrote the letter explaining the discrepancy between the amount of stock and the number of shareholders he meant that there were 15 shareholders on the date of his letter, and not as of the date the election was filed by Kent, so that no additional consents were necessary. Moreover, petitioners' assert that Schmidt's response to the Internal Revenue Service was tardy because the letter he received from the Internal Revenue Service concerning this discrepancy was inadvertently "filed" as an acceptance of the Form 2553, another point highlighted in Schmidt's December 28, 1981, letter to the Internal Revenue Service. At some point, realizing this error, Klempner himself telephoned the Internal Revenue Service in Ogden, *198 Utah several times and at trial testified that he received verbal approval of the Form 2553 although he had no recollection of the name of the person with whom he spoke. [3]
This unconvincing evidence in no way changes the reality of the situation. We are bound by long standing precedent in this area. To be effective, an election must be timely and in strict compliance with statutory and regulatory requirements. Brutsche v. Commissioner,585 F.2d 436 (10th Cir. 1978); Calhoun v. United States,370 F. Supp. 434 (W.D. Va. 1973); Rowland v. United States,315 F. Supp. 596 (W.D. Ark. 1970); Feldman v. Commissioner,47 T.C. 329 (1966); Pestcoe v. Commissioner,40 T.C. 195 (1963). [4] Petitioner's Form 2553 was not complete and not enough information was provided to the Service to complete it. Respondent's witness, Mr. Harris, currently, Chief, Adjustment Correspondence Branch of the Internal Revenue Service Center in Ogden, Utah, *199 testified that there was no policy of giving verbal approval of Forms 2553 over the phone in 1981, and did not recall such approval ever given. While he could not positively state that no employee ever granted such permission, it was unlikely. Mr. Harris had worked for the Internal Revenue Service for 19 years at the time of trial. In 1981, he was Chief of the Input Perfection Branch, where correction of errors in documents and processing occurred. He supervised approximately 300 employees in this capacity. We found Mr. Harris's testimony highly credible. Petitioners presented no evidence that supports their position that Schmidt was in fact the only shareholder at the time of the filing of the election. While petitioners entered into evidence the stock certificates of the owners of a total of 3,000 shares of Kent stock, numbered 1 through 15 and dated on or about December 18, 1981, Schmidt's certificate, if it existed at all, was not exhibited. In fact, Klempner, testifying at trial as to the stock certificates, conceded that it was possible that no stock certificate was ever issued for Schmidt and only *200 an offer to purchase was kept on file as a receivable. This evidence does not persuade us that Schmidt was a shareholder of Kent when the election was filed. Petitioners next argue that even if the Form 2553 was incomplete, it was timely filed and that Revenue Ruling 74-150[5] allows their Form 2553 to be effective because any changes in the number of shares issued is not deemed relevant to the validity of the subchapter S election. In that Revenue Ruling, a timely filed election to be treated as a small business corporation was not invalidated by the corporation issuing a lesser number of shares of stock than on its Form 2553. The corporation, with three shareholders owning equal amounts of stock, was incorporated with 9,000 shares of stock authorized but the issuance of the stock was to be based upon the appraisal value of certain assets. The corporation subsequently decided to issue its stock on the basis of cost rather than appraisal value and issued a lesser number of shares than was listed on Form 2553. Each shareholder had signed the shareholder's statement of consent necessary. Their percentage of ownership in the corporation remained intact. The Revenue *201 Ruling determined that the subchapter S election was not invalidated by the corporation issuing a lesser number of shares of stock than was set forth in the Form 2553 election. The facts of this Revenue Ruling are not analogous to petitioners' circumstances. The issue is not whether the number of shares issued and outstanding were changed or mistaken, but the lack of the consents necessary to validate the form. Kent was given an opportunity but failed to correct the form in time for the election to be valid. Even is we assume that Schmidt was the only shareholder at the time of the election, a fact not established by the record, this would not excuse the total disregard of the request to clarify the alleged confusion. This is crucial information for a valid subchapter S election. The Revenue Ruling cited by petitioners reiterates the importance of the consents of the shareholders in stating "the purpose of From 2553 is to provide a means by which a timely election may be made by a corporation *202 under section 1372, and to record the required consent of the shareholders to that election." (Emphasis added.) In the instant case, we do not find persuasive petitioners' stance that Schmidt was the sole shareholder of Kent in 1981, or in fact that he was ever a shareholder at all. The other arguments put forth by petitioners are equally unpersuasive. Therefore, the facts necessary to resolve the issue of the validity of the shareholder's consents, namely, what shares were issued, to whom and when, were not available to respondent and are still not clear in the record before the Court. There was no valid subchapter S election. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent also argues that Kent's attempted subchapter S election under I.R.C. 1372↩ was premature, ineffectual and a nullity because Kent did not have any shareholders or assets and had not begun doing business at the time of the filing. We need not consider this argument as we find respondent's other argument persuasive. 3. At trial, petitioners conceded that no reliance should be placed on the alleged verbal approval but nevertheless appeared to rely on it quite heavily on brief. ↩
4. See Smith v. Commissioner,T.C. Memo. 1988-18↩. 5. See Rev. Rule. 74-150, 1974-1 C.B. 241. But see also Rev. Rul. 60-183, 1960-1 C.B. 625↩. (Respondent has required strict adherence to the statutory requirements.)