CLIFFORD L. HOGAN and NANCY C. HOGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hogan v. Commissioner
Docket No. 5771-77.
United States Tax Court
T.C. Memo 1979-238; 1979 Tax Ct. Memo LEXIS 288; 38 T.C.M. (CCH) 943; T.C.M. (RIA) 79238; June 20, 1979, Filed; VACATED and REMANDED May 24, 1982 *288 Petitioners incorporated Slainte and were its only shareholders. A letter, typed by wife and signed by husband, stated that respondent's district director at Newark, New Jersey, was being notified that Slainte desired subchapter S status. Neither husband nor wife recalls mailing the letter, although they testified that it was placed with other outgoing mail. A search of respondent's records reveals neither the letter, any Form 2553 (Election by Small Business Corporation), nor shareholder consents with respect to Slainte. Held: petitioners have failed to prove the corporation timely elected subchapter S status. Clifford L. Hogan, pro se. Joseph F. Maselli, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in income tax and an addition to tax under section 6651(a) [1] (late filing) against petitioners as follows: Addition to
Taxable Year
Deficiency
Tax
1972
$ 3,793.50
$189.68
1973
10,945.64
0
1974
22,314.72
0 The parties have settled all but one of the issues raised in the pleadings. *289 The issue remaining for decision is whether petitioners' corporation had the status of an electing small business corporation ("subchapter S") for 1972 through 1974--in particular, whether the corporation timely elected that status. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition herein was filed, petitioners Clifford L. Hogan (hereinafter sometimes referred to as "Clifford") and Nancy C. Hogan (hereinafter sometimes referred to as "Nancy"), husband and wife, were legal residents of Bridgewater, New Jersey. During the years before the Court, Clifford was a self-employed real estate appraiser. On their joint individual income tax returns for these years, petitioners reported net profit from Clifford's real estate appraising occupation as shown in table 1. Table 1 Income Tax Return
Net Profit from
for Year
Real Estate Appraising
1972
$56,869.00
1973
53,185.00
1974
83,141.85
On September 10, 1971, petitioners incorporated Slainte, Inc. (hereinafter sometimes referred to as "Slainte"), as a New Jersey corporation. During the years before the Court, petitioners were equal shareholders--and *290 the only shareholders--in Slainte. Slainte was engaged in the business of renting and selling boats in Stuart, Florida. The legal work to incorporate Slainte was done as a favor to petitioners by Walter Davis (hereinafter sometimes referred to as "Davis"), an attorney who was a relative of petitioners. Davis did not file an election for Slainte to be taxed as an electing small business corporation under subchapter S (secs. 1371 through 1379) of chapter 1 of the Internal Revenue Code of 1954 (hereinafter sometimes referred to as a "subchapter S corporation"), nor did he witness the filing of such an election. He informed petitioners that some form of election of subchapter S status was necessary, but he had only a very general and sketchy knowledge of the technical requirements for the election. Nancy was Clifford's secretary in his real estate appraising business during the years in issue. She performed most of her secretarial work at home. Some time after Slainte was incorporated, Nancy typed the following letter on stationery that had the letterhead of Clifford's real estate appraising business. CLIFFORD L. HOGAN REAL ESTATE APPRAISER 390 GEORGE ST. SUITE 702 NEW BRUNSWICK, *291 N.J. 08901 September 15, 1971 District Director Internal Revenue Service Newark, New Jersey
Dear Sir; On September 10, incorporation papers for "Slainte Incorporated" were filed with the New Jersey Secretary of State. It is my understanding that "Slainte Inc." qualifies as a "Sub Chapter S" corporation, as my wife and I are the only share holders. It is my further understanding that to be taxed as a "Sub Chapter S" corporation notification is all that is required. Please be advised, at this time, that we are desious [sic] of a "Sub Chapter S" status. Thank you for your co-operation in this matter. Sincerely yours, CLIFFORD L. HOGAN President "Slainte Incorporated" cc/ Mr. Walter Davis Nancy did not sign the letter. Clifford signed the letter as Slainte's president. Neither Clifford nor Nancy recalls actually mailing the letter. Petitioners had a practice in 1971 of placing outgoing mail on top of a grandfather clock in their home. Whichever of petitioners went out first the following morning would mail whatever mail was on top of the grandfather clock. Petitioners adopted this practice to keep the mail out of the reach of their children because mail was "relatively safe" on *292 top of the grandfather clock. Slainte did not obtain an employer's identification number until June 1973. Respondent's agent began an audit of Slainte as a consequence of an audit of petitioners' individual income tax returns, the audit beginning in August 1974. On February 3, 1975, a Form 2553 (Election by Small Business Corporation), with appropriate shareholder consents, was filed with respondent's Brookhaven Service Center, and made effective January 1, 1975. That form stated that Slainte first had shareholders September 10, 1971, that Slainte first had assets September 10, 1971, that Slainte began doing business September 10, 1972, and that Nancy and Clifford acquired their stock on April 26, 1972. On January 19, 1976, a Form 2553 was filed which stated that Slainte first had shareholders September 10, 1971, that Slainte first had assets April 26, 1972, that Slainte began doing business April 26, 1972, and that Nancy and Clifford acquired their first shares of stock on September 10, 1971. The 1976 filing was made because of the addition of two shareholders as of January 10, 1976. Respondent's records for the entire country, including the Brookhaven Service Center, [2] do not *293 reveal the filing of an election by Slainte before February 3, 1975, to be treated as a subchapter S corporation, nor the filing of consents by the shareholders of Slainte to such an election before February 3, 1975. Petitioners deducted Slainte's losses on their joint income tax returns for the years before the Court in the amounts shown in table 2, claiming that Slainte was a subchapter S corporation. Table 2 Income Tax Return
for Year
Slainte Loss
1972
$ 7,718.00
1973
26,768.00
1974
46,527.26
Respondent disallowed these deductions OPINION If Slainte were a subchapter S corporation for the years before the Court, then petitioners would be permitted to deduct Slainte's losses on their individual income tax returns. [3] Respondent argues that Slainte was not a subchapter S corporation for the years 1972 through 1974, for two reasons. First, respondent alleges that no properly filed timely election by Slainte to be treated as a subchapter S corporation was made for these years. Second, respondent alleges that no consents by Slainte's shareholders to such an election were *294 filed for these years. Petitioners maintain that the letter dated September 15, 1971, constituted an election by Slainte to be treated as a subchapter S corporation from 1972 on. Petitioners also allege that the letter indicates the shareholders' consent to the election. We agree with respondent that Slainte did not timely elect subchapter S status for the years before the Court. In order for a corporation to be a subchapter S corporation it must elect to have the subchapter apply to it and this election must be consented to by all the shareholders. (Sec. 1372(a). [4] *295 ) In general, such an election is prospective only. The statute specifically requires compliance with regulations of the Treasury Department in the manner of making the election. (Sec. 1372(c)(1). [5] *296 ) Petitioners have the burden of proving that they filed a valid election for the years before the Court. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners have failed to prove that the 1971 letter was filed. Petitioners have testified to a course of conduct that normally would have led to the letter being mailed. However, respondent points out that a search of Internal Revenue Service Center records across the country failed to turn up any evidence that an election by Slainte to be treated as a subchapter S corporation was filed before February 3, 1975. We think that the results of respondent's record search is significant; it puts an even greater burden on petitioners to prove that an election was filed. Compare Brutsche v. Commissioner,585 F.2d 436 (CA10 1978), affg. and revg. 65 T.C. 1034 (1976) with Mitchell Offset Plate Service, Inc. v. Commissioner,53 T.C. 235 (1969). Petitioners have not presented us with any evidence of actual mailing. Apparently, nothing was done that would fix *297 in the mind of anyone a recollection of mailing the letter. Nothing was done to secure tangible evidence (such as a receipt from the United States Postal Service) of mailing. We note that petitioners appear to have been capable of running a successful business operation during the years before the Court. The net profit from Clifford's real estate appraising business averaged almost $65,000 per year during these years. Petitioners evidently recognized that, under normal circumstances, the income and losses of a corporation are separate from that of its shareholders and that some action had to be taken in order to bring into play the "integration" rules of subchapter S. We are not told why petitioners failed to follow through and take the steps that would avoid a later controversy, or at least strengthen their hand in the event of controversy. The burden of proof is on petitioners. They have come forward with evidence. The record also contains evidence adverse to petitioners. Considering the record as a whole, we conclude that petitioners have failed to bear their burden of persuasion that the 1971 letter was timely mailed. Petitioners rely on Mitchell Offset,supra, to demonstrate *298 that this Court has "accepted testimony and held that the presumption of delivery was not rebutted by such failure [i.e., respondent's failure to find any record of receipt of the election] and thus held the elections valid." [6]
In Mitchell Offset, we held that the shareholders had proved that the Form 2553 had been filed. The accountant testified that he prepared the form *299 and the consents, had them signed, placed them in a properly addressed, stamped envelope, and mailed them before May 10, 1959 (the corporation therein had been incorporated on April 13, 1959). The attorney testified that he maintained a calendar system to assure that each required step in electing under section 1372 was performed on time. The attorney also conferred on this matter by telephone with the accountant. Respondent in Mitchell Offset, made a very poor effort to locate the form by searching its files. The testimony and circumstances in Mitchell Offset are not present in the instant case, and thus we do not consider it dispositive. Since the 1975 election could not be retroactive (sec. 1372(c)(1), set forth at note 5, supra) and no other election is claimed to have been made for the years before the Court, we conclude that no valid subchapter S election was made for Slainte for the years before the Court. On the only contested issue, we hold for respondent. To reflect concessions made by both parties, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. Returns and elections forms filed with the Newark District Director are to be forwarded to the Brookhaven Service Center.↩
3. Respondent does not dispute the amounts of the claimed deductions. (Sec. 1374.)↩
4. SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION. (a) Eligibility.--Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation-- (1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or (2) on the day on which the election is made, if the election is made after such first day, consent to such election. [The subsequent amendments of this provision (by sec. 5(b)(2) of Pub. L. 95-628, 92 Stat. 3629, and sec. 343(b)(1) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2844), strking out paragraph (1) and part of paragraph (2), do not affect the instant case.] ↩
5. SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION. * * * (c) Where and How Made-- (1) In general.--An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations. [The subsequent amendments of this provision (by sec. 5(a) of Pub. L. 95-628, 92 Stat. 3628, by sec. 343(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2843, and by 1901(a)(149)(B) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1788) do not affect the instant case. Substantially the text of the last sentence of section 1372(c)(1) now appears as section 1372(c)(3).]
6. Petitioners also rely on Zaretsky v. Commissioner,T.C. Memo. 1967-247. In Zaretsky, the shareholder proved that Form 2553 had been executed and mailed. He did so by presenting three witnesses. The accountant testified that he witnessed the preparation and signing of the form and the shareholder consents. The bookkeeper testified that she typed the form and the consents, placed them in a stamped envelope addressed to the district director, placed that envelope on October 2, 1961 (29 days before the last day for filing the form), in a mailbox two blocks away, and that she distinctly recalled these events↩ because she had been told at the time that the documents were "important". Finally, the sole shareholder testified as to the signing of of these documents. Evidence of this sort is lacking in the instant case.