T.C. Memo. 1997-458


UNITED STATES TAX COURT


COLLIN L. DUGAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10582-94.                 Filed October 8, 1997.


<u>Larry D. Crabtree</u> and <u>Patrick M. Thomas</u>, for
petitioner.

<u>William W. Kiessling</u> and <u>Robert Nader</u>, for respondent.



MEMORANDUM OPINION


DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Lewis R. Carluzzo pursuant to section 7443A(b)(4) of the
Internal Revenue Code, as amended, and Rules 180, 181, and 183 of

the Tax Court Rules of Practice and Procedure. The Court agrees

with and adopts the opinion of the Special Trial Judge, which is

set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

CARLUZZO, Special Trial Judge: This case is before the

Court on petitioner's motion for administrative and litigation

costs pursuant to section 7430 and Rule 231.[1]

In separate notices of deficiency respondent determined

deficiencies in petitioner's 1988 and 1991 Federal income taxes

in the amounts of $15,292 and $30,508, respectively. Prior to

trial the parties filed a stipulation of settled issues which

addressed all of the adjustments in the notices of deficiency.

In conjunction with the filing of the stipulation of settled

issues, petitioner filed a motion for litigation costs. Because

petitioner's motion includes a claim for amounts expended for

legal fees and related expenses between the dates that the

---

[1] References to sec. 7430 are to that section as amended by sec. 1551 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752 (effective for proceedings commenced after Dec. 31, 1985) and by sec. 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3746 (effective with respect to proceedings commenced after Nov. 10, 1988). Because the petition in this case was filed on June 20, 1994, the provisions of the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701, 110 Stat. 1452, 1463-1464 (1996), which amended sec. 7430 effective with respect to proceedings commenced after July 30, 1996, are not applicable here. See Maggie Management Co. v. Commissioner, 108 T.C. 430 (1997). Unless otherwise indicated, references to other sections are to the Internal Revenue Code, as amended and in effect for the year 1991. Rule references are to the Tax Court Rules of Practice and Procedure.

notices of deficiency were issued and the petition was filed, as well as for costs incurred thereafter, we consider petitioner's motion as a motion for administrative and litigation costs.

## Background

Petitioner and Wanda M. Dugan are husband and wife who filed joint Federal income tax returns for the years 1988 and 1991. They resided in Greenbrier, Tennessee, at the time the petition was filed.

From 1986 until the fall of 1990, Mrs. Dugan owned and operated Nanna's Treasures, a sole proprietorship through which she designed, produced, and offered for sale ornate party and pageant apparel and accessories for young women. On September 5, 1990, Mrs. Dugan incorporated Nanna's Treasures, Inc. (NTI) with the assistance of Kelly Frey, an attorney. The corporation was organized to continue the business of Nanna's Treasures. Mrs. Dugan was NTI's sole shareholder. NTI did not conduct any business until January 1, 1991. Sometime prior to March 15, 1991, a Form 2553, Election by a Small Business Corporation, was prepared by Mr. Frey, and signed by Mrs. Dugan as the sole shareholder and president of NTI. On the Form 2553 Pamela Tidwell, a certified public accountant, was listed as the corporate officer or legal representative to be "called for information" in connection with the election. Ms. Tidwell was the accountant for the Dugans and NTI during the relevant periods, but she was not an officer of NTI, nor had she been

given power of attorney on behalf of NTI at the time the Form 2553 was initially received by respondent.

On or about March 14, 1991, the Form 2553 was sent by regular mail to respondent's Memphis Service Center (the Service Center). It was received on March 18, 1991, as evidenced by a date stamp placed on the document at the Service Center. NTI intended the election to be effective beginning January 1, 1991; however, the designated area on the Form 2553 where the effective date should have been filled in (box D) was left blank. Also left blank was the designated area for NTI's employer identification number (box A).

With respect to an incomplete Form 2553, in April 1991 section 3(13)2(34).(14) of the Internal Revenue Manual provided:

> (1) If the election is incomplete or eligibility cannot be determined, correspond via Letter 312C. Allow 30 days for the taxpayer's response. Annotate all actions on the case file, suspend the case.

> (2) TIMELY RESPONSE--If the reply to complete the election is received within the filing period or within 30 days, accept the election for the period requested.

> (3) LATE RESPONSE--If the reply to complete the election is received after the filing period and after the 30 day period, but before the 16th day of the third month of the following year, accept the election for the following year.

> (4) NO REPLY--If a reply is not received at the end of the suspense period, annotate the case file "No Reply". * * *. Send the taxpayer a letter explaining why Form 2553 was rejected.

> (5) If the reply is received after the 16th day of the third month of the following year, or the reply is incomplete, reject the election. * * *.

Apparently, in accordance with the above manual provisions, the original Form 2553 was returned to NTI with a Letter 312C dated April 9, 1991, from Beverly J. Baker, Chief of the Correspondence Section at the Service Center. In that letter Ms. Baker: (1) Acknowledged receipt of the Form 2553; (2) advised the corporation that the form could not be processed without the "Beginning date of the tax year for which * * * the election [is intended] to take effect"; (3) granted NTI 30 days from the date of the letter to complete and return the form; and (4) indicated that if a response was not received within that period, the election "may be treated as made for the following taxable year."

Respondent did not keep any permanent records that reflect receipt of the Form 2553 on March 18, 1991, or that indicate the April 9, 1991, letter had been sent to NTI returning the original Form 2553. On behalf of NTI, Mrs. Dugan received the April 9, 1991, letter and NTI's Form 2553; however, she did not immediately notify Mr. Frey or Ms. Tidwell of the situation, nor did she immediately complete and return the Form 2553 or otherwise respond to the letter.

On June 8, 1992, Mrs. Dugan filed a 1991 S corporation Federal income tax return, Form 1120S, for NTI. On June 16, 1992, the Dugans filed their 1991 joint Federal income tax return on which they claimed a passthrough loss deduction of $177,522 from NTI. The passthrough loss deduction generated a net

operating loss, which the Dugans carried back by amended return to 1988.

In a letter addressed to NTI dated August 3, 1992, Della A. Sanford, Chief of the Correspondence Section at the Service Center: (1) Advised NTI that the 1991 Form 1120S could not be processed because respondent had "no record of * * * [NTI's] filing Form 2553 and electing to be treated as an S corporation"; (2) requested a copy of a Form 2553 if one had been filed; and (3) advised that unless the requested information were received within a specified period, the Form 1120S would be processed as a "corporation income tax return (Form 1120)". Between receipt of the April 9, 1991, and August 3, 1992, letters, no correspondence or communication was exchanged between NTI, or anyone on its behalf, and respondent regarding the Form 2553 which had been submitted in March 1991.

In May 1992 Mrs. Dugan hired Alice McMurray to perform secretarial and bookkeeping work for NTI. Mrs. Dugan requested that Ms. McMurray respond to respondent's August 3, 1992, letter. After examining and discussing respondent's August 3, 1992, letter with Ms. Tidwell, Ms. McMurray located the signed Form 2553 dated March 14, 1991, and respondent's April 9, 1991, letter in NTI's files. At some point, either Ms. Tidwell or Ms. McMurray contacted Mr. Frey about the intended effective date of NTI's S corporation election, and he indicated that the election was intended to have been effective as of January 1, 1991.

On or about August 25, 1992, Ms. McMurray prepared a letter to respondent stating that the Form 2553 had been returned to NTI in 1991 "for a date that needed to be added", and representing that "someone mistakenly filed the form rather than completing and return[ing]" it. Ms. McMurray enclosed the Form 2553, which showed the March 18, 1991, date stamp, with the letter. The Form 2553 had been completed by Ms. McMurray to include an employer identification number and an effective date of "*12/91" (instead of the intended date of January 1, 1991) in the appropriate areas. The Form 2553 was received, for the second time, and filed by the Service Center on September 16, 1992.

Because of the date that it was received and filed, NTI was notified by respondent in a notice dated October 12, 1992, that its S corporation election would be effective beginning January 1, 1993. NTI did not respond to this notice. Between the August 25, 1992, letter and the October 12, 1992, notice, no communication or correspondence was exchanged between NTI, or anyone on its behalf, and respondent.

On September 20, 1993, Mrs. Dugan filed a 1992 Form 1120S for NTI. The 1992 Form 1120S had been prepared by Ms. Tidwell who at the time believed that the effective date of NTI's S corporation election had been resolved by Ms. McMurray's August 25, 1992, letter to respondent.

At or about the time NTI's 1992 Form 1120S was prepared, Ms. Tidwell discovered that NTI's S corporation election had been

made effective as of January 1, 1993. Ms. Tidwell notified Mrs. Dugan that the effective date of the election was contrary to the date of the intended election and her understanding of NTI's status when she prepared the Forms 1120S for NTI. Ms. Tidwell also advised Mrs. Dugan that the disagreement with respondent with respect to the effective date of NTI's S corporation election needed to be resolved.

At some point after the August 25, 1992, letter was sent, NTI's copies of respondent's April 9, 1991, letter and the date stamped Form 2553 were apparently misfiled and could not be located. On September 24, 1993, Ms. Tidwell sent a letter on behalf of NTI to respondent requesting a copy of respondent's April 9, 1991, letter. Neither Ms. Tidwell nor NTI received a response to this letter.

On September 24, 1993, Mrs. Dugan filed a bankruptcy petition in the U.S. Bankruptcy Court for the Middle District of Tennessee. The Dugans filed their 1992 joint Federal income tax return on October 18, 1993, on which they claimed a passthrough loss deduction of $154,855 from NTI.

By letter dated November 1, 1993, Ms. Sanford notified NTI that the 1992 Form 1120S could not be processed. The contents of this letter were similar to the contents of her August 3, 1992, letter to NTI regarding its 1991 Form 1120S. NTI did not respond to respondent's November 1, 1993, letter.

On January 20, 1994, two separate letters (the 30-day letters) with accompanying examination reports proposing changes to their 1988 and 1991 joint Federal income tax returns were mailed to the Dugans. The proposed changes resulted primarily from the disallowance of the passthrough loss from NTI in 1991 upon the ground that a valid S corporation election had not been filed by the corporation for that year. The 30-day letters listed Toni Williams as the contact person and were signed by Connie Hailey, Chief, Service Center Examination Branch. Responses to the 30-day letters were due on or before Tuesday, February 22, 1994.

At some point prior to February 18, 1994, Ms. Tidwell referred the Dugans to Larry D. Crabtree, attorney, for assistance in connection with the proposed adjustments made in the 30-day letters. Mr. Crabtree responded to the 30-day letters by letter dated February 22, 1994 (the protest letter), which was sent by certified mail to the "District Director, Memphis Service Center". In the protest letter, Mr. Crabtree requested an Appeals conference to discuss the proposed adjustments set forth in the 30-day letters. In addition, Mr. Crabtree contended that the relevant Form 2553 had been timely mailed so that NTI's S corporation election should have been effective for its 1991 taxable year.

In a telephone conversation that took place on or about March 17, 1994, Mr. Crabtree discussed the protest letter with

Byron Stout, an employee at the processing division at the Service Center. During this discussion Mr. Crabtree requested that Mr. Stout forward the protest letter to respondent's Appeals Office in Nashville, Tennessee.

Because the protest letter was not received by respondent's examination division within the designated period, preparation of the notices of deficiency began on March 3, 1994. Notices of deficiency for years 1988 and 1991 were mailed to the Dugans on March 22, 1994. In the notice of deficiency for 1991, the passthrough loss attributable to NTI was disallowed upon the ground that NTI's S corporation election was not effective until January 1, 1993. The notice of deficiency for 1988 disallowed the net operating loss carryback that was generated in 1991 by the passthrough loss. The deficiency notices indicated that if the Dugans took the position that NTI had timely filed a Form 2553 effective for 1991 they could provide as acceptable verification: (1) A certified mail receipt reflecting that the form was timely mailed; (2) a Form 2553 with date stamp acknowledging receipt; or (3) an IRS letter stating that Form 2553 had been accepted. Prior to the issuance of the notices of deficiency, respondent's administrative file did not disclose the receipt of a request for an Appeals conference made by or on behalf of the Dugans.

On June 10, 1994, Mr. Crabtree mailed a letter to respondent requesting that the notices of deficiency be rescinded. In

support of his request, Mr. Crabtree argued that respondent erred in denying NTI S corporation status for its 1991 taxable year because a "completed", signed Form 2553 had been timely filed. Mr. Crabtree presented factual support for NTI's claim that the form had been filed within the period necessary to have made it effective for 1991. He also argued that the omission of the effective date was, in essence, of no consequence. Attached to this letter was an unsigned Form 2553, and a Form SS-4, Application for Employer Identification Number. This letter was received by respondent on June 15, 1994.

The petition in this case was filed on June 20, 1994, the last day for doing so as prescribed by section 6213(a). Originally the Dugans were listed as petitioners, but the case was dismissed for lack of jurisdiction with respect to Mrs. Dugan due to the pendency of her bankruptcy proceeding at the time the petition was filed. See 11 U.S.C. sec. 362(a)(8)(1994).

Relevant for our purposes, the petition assigns as error respondent's determination that NTI's election to be treated as an S corporation was not effective until 1993. In support of this assignment of error, among other things, the petition alleges that NTI filed a Form 2553 within the first 2½ months of 1991 with the intent that the election was to be effective as of January 1, 1991; and that the Form 2553 was substantially and sufficiently complete such that a cursory review of the document would indicate that the election was timely filed in order to be

effective beginning January 1, 1991.  The petition further alleges that in April 1991 respondent sent a letter to NTI that acknowledged receipt of the Form 2553 in March 1991 and requested additional information with respect to it.

On or about July 6, 1994, Mr. Crabtree telephoned Connie Hailey to discuss his request that the notices of deficiency be rescinded.  Ms. Hailey advised Mr. Crabtree that the deficiency notices could not be rescinded because the Dugans had filed a petition in this Court in response to the deficiency notices.

On August 12, 1994, respondent filed an answer to the petition.  In the answer, respondent, due to "lack of sufficient knowledge or information", denied petitioner's allegations that a Form 2553 had been filed by NTI in March 1991 electing S corporation status effective January 1, 1991, and further denied the existence of respondent's April 9, 1991, letter to NTI.

At an Appeals conference held on August 25, 1994, Mr. Crabtree submitted affidavits from Mrs. Dugan and Ms. McMurray and other undescribed documents in an attempt to prove that the Form 2553 was first mailed by NTI and received by respondent during March 1991.  By letter dated March 29, 1995, Appeals Officer Sue Loy informed Mr. Crabtree that she had concluded that "Mrs. Dugan does not have proof of mailing the election".  However, after giving "consideration to the affidavits * * * submitted", Ms. Loy proposed that the case be settled "with the Government conceding that 50% of * * * [NTI's] loss for 1991 * *

* [be treated as] an S corporation loss and 50% [as] a C corporation loss". This proposal was apparently rejected by the Dugans. By letter dated October 18, 1995, Ms. Loy notified Mr. Crabtree that she was "not successful in securing a copy of the original form 2553 from the Service Center" and that the case was being forwarded to counsel for trial preparation.

At a conference held on February 12, 1996, Mr. Kiessling, the District Counsel attorney to whom the case was assigned, informed Mr. Crabtree that he had been unable to obtain verification that a Form 2553 had been filed by NTI prior to September 1992.

On February 13, 1996, Mr. Crabtree sent a letter (by mail and facsimile) to Mr. Kiessling attaching a copy of NTI's Form 2553 which bore a date stamp indicating receipt on March 18, 1991, and a copy of respondent's April 9, 1991, letter to NTI questioning the taxable year for which the election was applicable. These documents were apparently discovered by Mr. Crabtree while examining additional files forwarded to him by petitioner or Mrs. Dugan. These documents had not previously been provided by the Dugans or Mr. Crabtree to respondent during any stage of the controversy. On February 15, 1996, Mr. Kiessling advised Mr. Crabtree that respondent would concede the case.

On March 11, 1996, the parties filed the above-described stipulation of settled issues. Thereafter, petitioner and Mrs.

Dugan filed the motion here under consideration seeking attorney's fee and related expenses in the amounts of $22,145.50 and $588.39, respectively, plus additional attorney's fees and administrative expenses incurred in the prosecution of the motion.  The demand for attorney's fees represented approximately 170 attorney hours billed at rates between $145 and $175 per hour.  Respondent filed an objection to the motion on June 10, 1996, to which petitioner filed a reply on August 9, 1996.  A hearing was conducted on the motion in Nashville, Tennessee, on September 13, 1996.

## Discussion

Generally, section 7430 provides that to be entitled to an award for reasonable administrative and litigation costs the claimant must be a "prevailing party".  Sec. 7430(a).  To be considered a prevailing party, the claimant must establish:  (1) The position of the United States in the proceeding was not substantially justified; (2) the claimant prevailed with respect to the amount in controversy or with respect to the most significant issue presented; and (3) the claimant met the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B)(1994) on the date the petition was filed.  In addition, the claimant must establish that all administrative remedies have been exhausted insofar as litigation costs are concerned; that the claimant has not unreasonably protracted the proceedings; and that the amount of costs claimed is reasonable.  Sec. 7430(b)(1), (4).  The

moving party bears the burden of proof with respect to each of the above-listed elements.  Rule 232(e).

Respondent objects to petitioner's motion on several grounds.  First, respondent argues that, although the case was ultimately conceded, respondent was substantially justified in taking the position that NTI's S corporation election was not effective until 1993 and that the Dugans therefore could not take into account a passthrough loss from NTI in 1991 and carry back a portion of that loss to 1988.  Second, respondent argues that petitioner unreasonably protracted the proceedings by not responding to numerous letters sent to NTI or providing certain information until February 1996.  Third, respondent argues that petitioner did not exhaust his administrative remedies because he did not timely file a request for an Appeals conference after the issuance of the 30-day letters.  Finally, respondent argues that the amount of costs and attorney's fees are excessive to the extent that the hourly attorney's fees exceed the amount allowed by section 7430, and further that all fees attributable to petitioner's request for rescission of the notices of deficiency should be disallowed because the request was made only days before the petition was filed.

Substantial Justification

   1. S Corporation Elections In General.

Section 1362(a)(1) allows a small business corporation, as defined under section 1361, to elect S corporation status.  An S

corporation election can be made for any taxable year at any time during the preceding taxable year or on or before the 15th day of the third month of the current taxable year. Sec. 1362(b)(1). A taxpayer who elects to take advantage of the benefits of being treated as an S corporation must comply with the requirements for making the election. Garrett & Garrett, Inc. v. Commissioner, T.C. Memo. 1993-453. Congress imposed time limits for making an S corporation election so that a corporation must make the election before it can predict its profitability for the year with any certainty. These time limits serve to prevent taxpayers from using S corporation status solely as a tax avoidance mechanism. McClelland Farm Equip. Co. v. United States, 601 F.2d 365, 367 (8th Cir. 1979); H. Rept. 95-1445, at 104 (1978), 1978-3 C.B. (Vol. 1) 181, 278.

In addition to being timely filed, to be effective for a particular year, an S corporation election must be complete, properly filed, and in compliance with statutory and regulatory requirements. See Brutsche v. Commissioner, 585 F.2d 436, 439 (10th Cir. 1978), revg. on another issue and remanding 65 T.C. 1034 (1976); Garrett & Garrett v. Commissioner, supra.

Section 1377(c) requires that any "election under this subchapter * * * shall be made in such manner as the Secretary shall by regulations prescribe." To make an election a small business corporation is required to file a Form 2553 containing all the information required by that form. Rockwell Inn, Ltd. v.

<u>Commissioner</u>, T.C. Memo. 1993-158; see also sec. 18.1362-1(a), Temporary Income Tax Regs., 48 Fed. Reg. 3591 (Jan. 26, 1983). Moreover, S corporation status must be firmly and clearly elected. <u>Smith v. Commissioner</u>, T.C. Memo. 1988-18. This Court has required compliance with the requirements of S corporation elections. See <u>Combs v. Commissioner</u>, T.C. Memo. 1989-206, affd. without published opinion 907 F.2d 151 (6th Cir. 1990). It is essential to establish that an S corporation election has been made and the effective date of the election so as to preclude the use of the S corporation election as a tax avoidance mechanism and to bind the corporation and its shareholders to the election. <u>Garrett & Garrett v. Commissioner</u>, <u>supra</u>; <u>Rockwell Inn, Ltd. v. Commissioner</u>, <u>supra</u>.

<u>2. NTI's S Corporation Election</u>.

Set against this background, we consider whether respondent's position is substantially justified, keeping in mind that petitioner bears the burden of proving that it is not. Sec. 7430(c)(4)(A); Rule 232(e); <u>Gantner v. Commissioner</u>, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).

Up until the point that respondent conceded the case, respondent's position was that the Dugans could not compute their 1988 and 1991 Federal income tax liabilities taking into account the passthrough loss from NTI in 1991 because NTI's S corporation election was not effective until 1993. This determination was based upon the Form 2553 received in the Service Center on

September 16, 1992.  Although initially disputed by respondent, it is clear, and respondent now concedes that the document was first received in the Service Center on March 18, 1991, at a time when the election could have been effective for NTI's 1991 year. Secs. 1362, 7502.  We view respondent's actions with respect to the initial receipt of the Form 2553 on March 18, 1991, to be relevant in determining whether respondent's position in the case in both the administrative and judicial proceedings should be considered substantially justified.

Whether respondent's position is substantially justified turns on a finding of reasonableness, based upon all of the surrounding facts and circumstances, as well as legal precedents relating to the case.  Pierce v. Underwood, 487 U.S. 552, 565 (1988); Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person."  Pierce v. Underwood, supra at 565.  We may consider the reasonableness of respondent's position in the administrative proceeding separately from respondent's position in the judicial proceeding.  Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part, and remanding on another issue T.C. Memo. 1991-144.  In this case, however, because the positions are the same, we consider them in a single analysis.

It is undisputed that the Form 2553 was incomplete when it was received in the Service Center on March 18, 1991. The individual who originally reviewed the form followed the instructions provided in the Internal Revenue Manual with respect to incomplete Forms 2553. The form was returned to NTI with a letter dated April 9, 1991, that contained specific inquiries and directions. The actions of the Service Center employee who followed the instructions in the manual were reasonable under the circumstances. NTI did not respond to respondent's April 9, 1991, letter until long after the designated period to do so had expired. On September 16, 1992, when NTI's Form 2553, now with an incorrect effective date filled in, was received for the second time in the Service Center, respondent's action in treating the election as effective for 1993 was also reasonable given the date that the form was received, notwithstanding the fact that on the face of the document a date stamp indicated that it was first received in the Service Center on March 18, 1991. Sec. 1362.

Because we are not addressing the validity of the Form 2553 as submitted in March 1991 with the effective date missing, we see little point in specifically addressing the cases relied upon by petitioner in support of his claim that the omission of the date was inconsequential. Suffice it to say that we disagree with petitioner's argument that returning the Form 2553 pursuant to the relevant Internal Revenue Manual provisions was contrary

to Rev. Rul. 74-150, 1974-1 C.B. 241 (which concluded that unnecessary, albeit erroneous, information contained on a Form 2553 did not adversely effect the validity of the election), and also contrary to the line of cases addressing the effective dates of S corporation elections in situations where the taxpayers omitted essential information from Forms 2553.  Returning the Form 2553 was consistent with the instructions in the manual, which instructions were consistent with the body of law previously discussed, see supra pp. 15-17, and cannot be considered unreasonable under the circumstances.

We have observed in numerous opinions that the Commissioner's concession of an issue is not determinative of whether the Commissioner's position in the proceeding was substantially justified, Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986), but merely a factor to be considered, Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991).

After considering the surrounding circumstances, we find that petitioner has failed to establish that respondent's position disallowing the NTI passthrough loss claimed by petitioner and Mrs. Dugan in 1991 (a portion of which was carried back to 1988) because NTI's S corporation election was not effective until 1993 was not substantially justified. Consequently, petitioner cannot be considered a prevailing party within the meaning of section 7430(a).

Respondent's Other Objections to Petitioners' Motion

Because the requirements of section 7430 are in the conjunctive, <u>Minahan v. Commissioner</u>, 88 T.C. 492, 497 (1987), our finding that petitioner has failed to prove that respondent's position was not substantially justified, and therefore that petitioner is not a prevailing party, operates in and of itself to deny petitioner's motion. Consequently, we need not address respondent's other objections to the motion.

To reflect the foregoing,

<u>An appropriate order will be issued denying petitioner's motion, and a decision will be entered herein</u>.